PETERNELLE C. ARNTSON, Appellant, v. FIRST NATIONAL BANK OF SHELDON, a Banking Corporation, and Thomas J. Harris, as Trustee of Ingebrigt E. Arnston, Bankrupt, Respondents.

(L.R.A.1918F, 1038, 167 N. W. 760.)

**Will — disposition of property — constructive trust — involuntary trust — promise to deed over property — by children to mother — on death of father leaving no will — trust created by — may be enforced in equity against children — judgments against children — lien and claim of mother to lands — superior to such judgments.**

1. Where one sick unto death calls his children to him, and says, "I want

NOTE.—For authorities discussing the question as to whether a constructive trust may be based upon an undertaking to hold, for the benefit of another, property received through devise or inheritance, where no actual testamentary intention has been frustrated, see notes in 33 L.R.A.(N.S.) 996 and L.R.A.1918F, 1045.

On the question of creation of constructive trusts in land by parol, see comprehensive note in 115 Am. St. Rep. 786.

mother (his wife) to have all, and I want you boys to deed it to her when I am gone. This will be as good as a will," and the sons promise to convey such property to the mother, and in reliance on such promise the father dies without making a will, a constructive trust, according to the ordinary rules of equity, an involuntary trust, under the provisions of §§ 6273 and 6280 of the Compiled Laws of 1913, is created, which may be enforced against the sons and which is superior to the liens of the judgments of their individual creditors.

**Property descending to sons — promise by them to convey to mother — made to father dying without will — oral trust created — subsequent execution of conveyance — made in compliance with promise — takes. case out of statute.**

2. Where an oral trust is created by the promise of the sons at the sick bed of their father to convey the property, which descends to them, to their mother after their father's death, the subsequent execution of a conveyance will take the transaction out of the provisions of the statutes, which generally require trusts in relation to real property to be created in writing.

**Lands — creation of trusts in — resting wholly in parol — person receiving lands for benefit of another — trust not declared in writing but fulfilled — court will recognize its existence — creditor of trustee — cannot dispute trust.**

3. The law refuses its aid to enforce agreements creating trusts or charges. upon land when they rest altogether in parol, not because the trusts are therefor void, but because it will not permit them to be proved by such evidence. But when a person who has received the title to such lands for the benefit of another, although not having declared the fact in writing, recognizes and fulfils the trust, it is not the duty of the court to deny its existence, nor can an individual creditor of such trustee dispute the same.

**Lien of judgment — affects only actual interest in lands — real owner may always show his interest — absence of fraud — apparent ownership — not real — may be shown — lien of judgment — does not attach to naked legal title.**

4. The interest which the lien of the judgment affects is the actual interest. which the debtor has in property, and a court of equity will always permit the real owner to show, there being no intervening fraud, that the apparent ownership of another is or is not real; and when the judgment debtor has. no other interest, except the naked legal title, the lien of the judgment does not attach.

**Trusts — "created or declared by operation of law" exempts from expres-. sion in writing — includes constructive trusts.**

5. The term, "created or declared by operation of law," as found in § 5364

of the Compiled Laws of 1913, and which exempts from the requirement of expression in writing, the trust so created, includes constructive trusts.

**Oral trust — confidential relations — influence · of — trust violated — constructive trust arises — promises — refusal or failure to keep — courts of equity will enforce.**

6. Where confidential relations prevail between the parties to an oral trust, and the trust is violated, the law presumes that the influence of the confidence upon the mind of the person who confided was undue, and a case of a constructive trust arises, not, however, on the ground of actual fraud, but because of the facility for practising it, and in such a case courts of equity will enforce the promise to convey, even though it may be not in writing, as the mere refusal to carry it out is constructively fraudulent.

**Respecting property — constructive trusts — raised by equity — acquired by fraud.**

7. Constructive trusts are such as are raised by equity in respect to property, which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.

**Implied or resulting trust — purchaser or encumbrancer of property for value and without notice — prejudiced by — unrecorded deeds — secret trusts — creditors and purchasers — protected against.**

8. Section 5366 of the Compiled Laws of 1913, which provides "that no implied or resulting trust can prejudice the rights of a purchaser or encumbrancer of real property for value, and without notice of the trust," and § 5594, which provides for the recording of deeds, merely protect creditors and purchasers against unrecorded conveyances of or secret trusts upon the property of their debtors, and of property which, if it had not been for the secret trusts or the unrecorded conveyances, would have been properly subjected to their debts.

**Wills — execution of — strictness of law — requires expression of real intention — creation of trust in lieu of will — heirs — creditors of — cannot complain.**

9. The strictness of the law in relation to the execution of wills is not due to any solicitude for the creditors of the heirs, but to a desire that the real intention of the testator shall be ascertained and prevail. A personal creditor of one of the heirs, therefore, cannot complain that the deceased, instead of making a will of his property to his wife, created a trust by which his children agreed to convey it to her.

Opinion filed April 12, 1918.

Action to quiet title.

Appeal from the District Court of Ransom County, Honorable *Charles A. Pollock,* Special Judge.

Judgment for defendants. Plaintiff appeals.

Reversed.

Statement of facts by BRUCE, Ch. J.

This is an action to quiet title in the plaintiff, Peternelle C. Arntson, in certain real estate owned by her husband while living. The plaintiff claims under a deed executed by her sons after the death of their father, and in pursuance of an agreement made with him shortly before his death. The defendant bank claims title to the interest of one of the sons, Ingebrigt E. Arntson, and bases its claim on a purchase made by him on an execution sale for a deficiency decree on the foreclosure of a mortgage made by the said Ingebrigt Arntson, said mortgage having been made to the said defendant, and the defendant purchasing at its own sale, the levy having been made prior to the execution of the deed by the sons to their mother, but the sale being subsequent to execution and recording of the instrument.

Briefly and in chronological order the facts are as follows:

On August 7, 1912, respondent commenced an action to foreclose its mortgage on real estate owned by one I. E. Arntson, in Ransom county, the action being afterwards decided in favor of Arntson in the lower court and respondent herein appealed.

Meantime, and while the appeal was pending, Eric Arntson, the father of said I. E. Arntson, became sick unto death, called his five boys about his deathbed and said to them, in substance:

"I haven't much property to leave, but what I have I want mother [his wife] to have it all, as she has got to have someone to take care of her, and I want you boys to deed it to her when I am gone. This will be as good as a will."

The five boys agreed to this and so told their father, who died a few days later, April 17, 1914.

About a month after this agreement between the father and sons and the father's death, this court reversed the decision of the lower court in the foreclosure action, and judgment was entered against I. E. Arntson; the land covered by the mortgage was sold, and a deficiency judgment for $669.31 entered.

In November, 1915, execution issued on this deficiency judgment and was levied on the interest of said I. E. Arntson in 260 acres of land of which his father, Eric Arntson, died seised,—the land the sons had agreed at their father's deathbed to convey to their mother.

On December 4, 1915, all the five boys joined in a deed to their mother of their father's land, said deed reciting that it was executed to carry out and execute the parol trust declared and created by their father at his death. This deed was recorded on December 4, 1915.

Thereafter, and on the 5th day of February, 1916, the sheriff sold the lands levied on, and the creditor defendant purchased at such sale, and this action was thereafter brought by appellant, the widow of Eric Arntson and the mother of the five boys, to quiet her title as against the sheriff's certificate held by such creditor bank, the respondent herein. Respondent counterclaimed, appellant replied, and the case was heard by Judge Pollock on said counterclaim and reply, and a decision rendered for respondent, whereupon this appeal was perfected and a trial *de novo* demanded.

*Pierce, Tenneson, & Cupler,* for respondent bank.

No trust was ever created or existed in this case. The heirs (debtors) received their interest in the real estate and property by virtue of the statutes of succession and by operation of law, and not by any act of the decedent. Nothing was done by the deceased to complete a trust or to bring into existence a valid and legal trust. 39 Cyc. 43, 76; 1 Perry, Trusts, 5th ed. § 99, p. 103; Brabrook v. Savings Bank, 104 Mass. 228; Jones v Lock, L. R. 1 Ch. 25.

"There must be some act of delivery out of the possession of the donor, for the purpose and with the intent that the title shall thereby pass." Minchin v. Merrill, 2 Edw. Ch. 333; Howard v. Windham Co. Sav. Bank, 40 Vt. 597; Brabrook v. Savings Bank, 104 Mass. 231; Re Small, 50 N. Y. Supp. 341.

If anything remains for the donor to do to vest the legal title in the donee, the court cannot execute the trust if it is voluntary. 1 Perry, Trusts, 5th ed. § 100, p. 105.

The arrangement as made between the parties as disclosed was void as a testamentary disposition. No interest was to pass or vest until after the death of the father, the so-called trustor. Diefendorf v. Diefendorf, 8 N. Y. Supp. 617; Hill v. Hill, 7 Wash. 409, 35 Pac. 360;

Chestnut St. Nat. Bank v. Fidelity Ins. Co. 136 Pa. 339, 65 Am. St. Rep. 860, 40 Atl. 486.

A testator cannot affect the equitable any more than the legal estate for the one is a constituent part of the ownership as much as the other. No such disposition as is here claimed can be made unless it be declared in writing in strict conformity with the statute regulating devises and bequests. 1 Perry, Trusts, §§ 89–94, pp. 91–93.

If a gift or testamentary disposition is intended and the instrument is informally executed, it cannot be held valid as a trust. 1 Perry, Trusts, § 97, pp. 99–100 and cases cited in note 1 (a).

An express trust in real property cannot be created or proved by parol. Comp. Laws 1913, §§ 5364, 5384, 5394, 5511, 5888; 39 Cyc. pp. 46, 49 and notes 65 & 66; Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088; Carter v. Carter, 14 N. D. 66, 103 N. W. 425; Smith v. Mason, 55 Pac. 143; Von Trotha v. Banberger (Colo.) 24 Pac. 883; Reagan v. McKibben (S. D.) 76 N. W. 943; McCammon v. Pettitt, 3 Sneed, 242, 2 Devlin, Real Estate, 3d ed. § 1183.

Defendant's judgment became a lien upon the interest of Arntson, the heir, immediately upon his father's death. Comp. Laws 1913, § 7691; Union Bank v. Ryan, 23 N. D. 482; Yader v. Bank (Iowa) 119 N. W. 147.

A judgment creditor is placed in the same position as a purchaser or encumbrancer under our recording statute. Comp. Laws 1913, §§ 5594, 5727, 6755; Mer. St. Bank v. Tufts, 14 N. D. 238, 116 Am. St. Rep. 682, 103 N. W. 760; Ilveldsen v. First St. Bank, 24 N. D. 227, 139 N. W. 105.

Bruce, Ch. J. (after stating the facts as above). The question to be decided in this case is whether the deed of the children to their mother was effective as against the levy of the judgment of the First National Bank of Sheldon, and against the sheriff's certificate which it obtained at the sale under said judgment. Did or did not the oral promise of the children of the deceased to convey the property to their mother create a trust which was superior to such lien and to such certificate? Was there any property of the defendant Ingebrigt Arntson on which the lien of the judgment could operate?

(1) The contention of the defendant. the First National Bank of

Sheldon is that no trust was created because the title to the property remained in the hands of the deceased up to the time of his death and there was no conveyance to trustees.

(2) That from everything that was done and said it clearly appears that the deceased intended that the arrangement should be the same as a will, and that no title or interest should pass from him until after his death; that the arrangement, therefore, amounted to a testamentary disposition, and being oral, and not in writing, and not being executed with the formality required by law in the case of wills, it was null and void.

(3) That the trust, if any, was oral, and that under the statutes of North Dakota an oral trust is void.

(4) That under §§ 5742 and 7691 of the Compiled Laws of 1913, the judgment became a lien upon the interest of Ingebrigt Arntson in his father's estate immediately upon his father's death.

(5) That defendant bank is a judgment creditor of the said I. E. Arntson, and is placed in the same position as a purchaser under § 5594 of the Compiled Laws of 1913, which relates to the recording of deeds.

(6) That at the judgment sale it became a purchaser of the property from the heir, and as such was protected by the provisions of § 5727 of the Compiled Laws of 1913 from secret gifts made by the deceased.

(7) That under the provisions of § 6755 of the Compiled Laws of 1913 a defeasance is not enforceable as against any person other than the grantee, unless it is in writing and recorded.

The sections of the Compiled Laws which need to be considered in this case are the following:

Section 5364: "No trust in relation to real property is valid unless created or declared:

"1. By a written instrument subscribed by the trustee or by his agent thereto authorized in writing. [See § 4821, Revised Codes of 1905. Subdivision 1 of § 5364, as given in the Compiled Laws of 1913, is incorrectly compiled.]

"2. By the instrument under which the trustee claims the estate affected; or,

"3. By operation of law."

Section 5366: "No implied or resulting trust can prejudice the

right of a purchaser or encumbrancer of real property for value and without notice of the trust."

Section 5742: "The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court and to the possession of any administrator appointed by that court for the purpose of administration."

Section 7691: "On filing a judgment roll upon a judgment directing in whole or in part the payment of money, it may be docketed with the clerk of the court, in which it was rendered, in a book to be known as the judgment docket, and in any other county upon filing with the clerk of the district court for said county a transcript of the original docket, and it shall be a lien on all the real property except the homestead in the county where the same is so docketed of every person against whom any such judgment shall be rendered, which he may have at the time of the docketing thereof in the county in which such real property is situated or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered, and no judgment heretofore rendered shall hereafter become a lien on real property as herein provided, unless it is docketed in the county where the land is situated."

Section 5594: "Every conveyance by deed, mortgage or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, deed of quitclaim and release, of the form in common use or otherwise, is first duly recorded; or as against any attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. . . ."

Section 5727: "The rights of a purchaser or encumbrancer of real property in good faith and for value derived from any person claiming the same by succession are not impaired by any devise made by the decedent from whom succession is claimed, unless the instrument con-

taining such devise is duly proved as a will, and recorded in the office of the county court having jurisdiction thereof, or unless written notice of such devise is filed with the county judge of the county where the real property is situated within four years after the devisor's death."

Section 6755: "When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees or persons having actual notice unless an instrument of defeasance duly executed and acknowledged, shall have been recorded in the office of the register of deeds of the county where the property is situated."

Section 6273: "An involuntary trust is one which is created by operation of law."

Section 6280: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it."

There can be no doubt that there was in the case at bar no express trust, as there was no transfer of the title in the property to the trustee or trustees during the lifetime of the deceased. It seems, indeed, that the intention was merely that the arrangement should take the place of a will, or, to use the language of the testator, "be as good as a will," and that not only was no transfer to the mother contemplated during the deceased's lifetime, but no present transfer to his children, as trustees, was either contemplated or made.

It is also clear from the evidence that no conveyance was made until after the execution of the First National Bank had been levied, and it is clear that since, under § 5742 of the Compiled Laws of 1913, the title to the property vested in the heirs immediately upon the death of the deceased, subject only to debts of the intestate and the control of the administrator for the payment of such, the lien of that judgment was paramount unless it could be defeated by a subsequent execution of the parol trust, or there was a prior and enforceable constructive trust.

This subsequent execution of the deed can only be held to have defected the judgment lien on the theory that the judgment creditor

merely stood in the shoes of his debtor, and had no greater right than he had, and that the real estate, though nominally in the names of the sons and daughters at the time of the levy of the execution, did not in fact belong to them, and could not have been voluntarily used by them in the payment of their debts.

This theory, however, we believe to be correct and to be controlling.

The question is one primarily of proof. The action is one to determine adverse claims. The plaintiff introduces in evidence a deed from the heirs to herself, executed, it is true, after the lien of the judgment had attached, but by those in whom the legal title to the land vested after the death of the deceased. The defendant bank relies upon the sheriff's certificate and asks to have the deed set aside. It is clear that, as between the sons and daughters and their mother, the deed is valid and binding, as it seems to be well established that: "The law refused its aid to enforce agreements creating trusts or charges upon lands, when they rest altogether in parol, not because the trusts are therefore void, but because it will not permit them to be proved by such evidence. But when a person who has received the title to lands purchased for the benefit of another, although without having declared the fact in writing, recognizes and fulfils the trust, it is not the duty of the court to deny its existence. . . . A debtor will not be permitted to convey away his property, either real or personal, and relieve it from the encumbrances occasioned by his debts; but there is nothing to prevent his restoring to others their property if it has been placed in his hands. Nor is there any reason why the property of others should be subjected to the payment of his debts, if he is honest enough to refuse to avail himself of an opportunity to use it for that purpose." Sieman v. Austin, 33 Barb. 9; Borst v. Nalle, 28 Gratt. 423; Freeman, notes in 115 Am. St. Rep. 783; Eaton v. Eaton, 35 N. J. L. 290; Hays v. Reger, 102 Ind. 524, 1 N. E. 386; Robbins v. Robbins, 89 N. Y. 251; Gallagher v. Northrup, 215 Ill. 563, 74 N. E. 711, reversing 114 Ill. App. 368; Collins v. Collins, 98 Md. 473, 103 Am. St. Rep. 408, 57 Atl. 597, 1 Ann. Cas. 856.

It is also well established that "The interest which the judgment lien affects is the actual interest which the debtor has in the property, and a court of equity will always permit the real owner to show, there being no intervening fraud, that the apparent ownership of another

is or was not real; and when the judgment debtor has none other than the legal title, the lien of the judgment does not attach." White v. Carpenter, 2 Paige, 219, note; Keirsted v. Avery, 4 Paige, 9; Thomas v. Kennedy, 24 Iowa, 397, 95 Am. Dec. 740; Brown v. Pierce, 7 Wall. 205, 19 L. ed. 134; Monticello Hydraulic Co. v. Loughry, 72 Ind. 562; Hays v. Reger, 102 Ind. 524, 1 N. E. 386; Richmond v. Block, 36 Or. 590, 60 Pac. 385.

It is true that in the majority of the cases upon the subject, and which have held the trust superior to the judgment lien, there was an actual transfer of the legal title to the trustee by the grantor or creator of the trust; but we do not see that this alters the situation. There was an oral promise, and in consideration of or relying upon that promise the deceased refrained from making a will. Immediately upon his death the title to the property vested in those whom he had intended to create trustees. Why should equity treat the case any differently than if he had actually deeded the land to these persons, taking from them an oral promise which they afterwards performed?

The defendant bank was neither a party to nor a privy to the transaction which it here assails, and it will not be heard to object to it on account of the nature of the evidence by which it is proved, since the parties themselves have executed it and are satisfied with it. Dixon v. Duke, 85 Ind. 434; Savage v. Lee, 101 Ind. 514; Hays v. Roger, 102 Ind. 524, 1 N. E. 386; Richmond v. Bloch, supra.

We are satisfied, indeed, that even if the children had refused to convey the property to their mother they could have been compelled to do so on the theory of a constructive trust, and that the equities of the plaintiff are much greater than those of the defendant bank, which, if the deceased had not relied upon the promises of his children, and had made a will, would have had no property to attach whatever. The creditors of heirs are not privies to the making of a will by the testator and to his acts. As against the wife and mother, the bank has no equities. It has parted with nothing of value. It did not loan the money on the strength of Ingebrigt Arntson's title to the land, for at the time of the loan the land belonged to his father, and his father could do with it as he chose.

Although there is some conflict upon the subject, the courts now seem generally to concede that, under statutes such as § 5364 of the

Compiled Laws of 1913, constructive trusts come within the definition and exception of trusts which are "created or declared . . . by operation of law." In the light of the judicial decisions indeed, "the phrases, 'trusts by implication of law,' 'trust by operation of law,' 'implied trusts,' and 'trusts arising or resulting by operation of law,' are all synonymous and embrace all trusts where a transaction of equitable cognizance is inseparably connected with the creation of the trust." Freeman's notes in 115 Am. St. Rep. 775; Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640.

"A constructive trust. . . is merely an express trust wherein some transaction of equitable cognizance is inseparably connected with the creation of the trust, so that a court of equity has jurisdiction to administer relief to the parties on the whole transaction, including the express agreement between them, *notwithstanding that agreement* is oral and would not be cognizable in a court of justice in the absence of the equitable elements connected with it. A constructive trust can never arise in the absence of an express agreement of trust between those concerned in the transfer of the legal title of land, but is always superimposed upon and could not exist without an express oral trust, which in turn would be unenforceable without the constructive trust." Freeman's notes in 115 Am. St. Rep. 775.

We believe that there was a constructive trust in the case which is before us.

It is true as a general proposition that a mere breach of an oral agreement to convey an interest in land is not such a fraud as will create a constructive trust and justify the intervention of a court of equity, but "where confidential relations prevail between the parties to an oral trust and the trust is violated, the law presumes that the influence of the confidence upon the mind of the person who confided was undue; and a case of constructive trust arises, not, however, on the ground of actual fraud, but because of the facility for practising it. Hayne v. Hermann, 97 Cal. 259, 32 Pac. 171" (115 Am. St. Rep. 791, note); Allen v. Jackson, 122 Ill. 567, 13 N. E. 840.

It is immaterial indeed whether the fraud was intentional or not, or whether it existed when the legal title passed, for "in such a case courts of equity do not enforce the trust in violation of the Statute of Frauds, but relief is granted as based on the constructive fraud and

the confidential relation." Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088; Hanson v. Svarverud, 18 N. D. 550, 120 N. W. 550, Ransdel v. Moore, 153 Ind. 408, 53 L.R.A. 753, 53 N. E. 767; Powell v. Yearance, 73 N. J. Eq. 117, 67 Atl. 892; Kimball v. Tripp, 136 Cal. 631, 69 Pac. 428; note to Stahl v. Stahl, 2 Ann. Cas. 774–777; Russell v. Jackson, 10 Hare, 204, 68 Eng. Reprint 900; Re O'Hara, 95 N. Y. 403, 413, 47 Am. Rep. 53; Ragsdale v. Ragsdale, 68 Miss. 92, 11 L.R.A. 316, 24 Am. St. Rep. 256, 8 So. 315; Dixon v. Olmius, 1 Cox Ch. Cas. 414, 29 Eng. Reprint, 1227.

The case at bar comes clearly within this rule. Pollard v. Mc-Kenney, 69 Neb. 742, 96 N. W. 679, 101 N. W. 9; Bohm v. Bohm, 9 Colo. 100, 10 Pac. 790; Brison v. Brison, 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689; Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067.

Under circumstances such as those before us courts of equity will enforce the promise to convey, as the refusal to carry it out is constructively fraudulent, and this even though the promise was not in writing. Beach, Tr. & Trustees, § 225; Cardiff v. Marquis, and Hanson v. Svarverud, supra.

It is not always necessary that fraud in the inception of the transaction should be proved in order that there should be a constructive trust. "Constructive trusts," indeed, "are such as are raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds the legal title." 2 Washb. Real Prop. 520; Lewis v. Lindley, 19 Mont. 422, 48 Pac. 765.

In the case before us, also, we clearly have an involuntary trust as defined by §§ 6273 and 6280 of the Compiled Laws of 1913, and which seem to include both a constructive and a resulting trust. These sections are as follows:

Section 6273: "An involuntary trust is one which is created by operation of law."

Section 6280: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it."

"In the case of a resulting trust there is always the element, although it is an implied one, of an intention to create a trust by reason of which, although it is by no means an express trust, it approaches more nearly thereto. Constructive trusts, on the other hand, have none of the elements of an express trust, but arise entirely by operation of law without reference to any actual or supposed intention of creating a trust, and often directly contrary to such intention. They are entirely *in invitum,* and are forced upon the conscience of the trustee for the purpose of working out right and justice or frustrating fraud." 39 Cyc. 27.

If, in the inception of the transaction before us, the children of the deceased and the defendant Ingebrigt Arntson purposely induced the deceased to refrain from making a will by promising him to convey the property to his wife when the same should vest in them by virtue of the Statutes of Inheritance, we have all of the elements of a constructive trust. If, on the other hand, we have an intention expressed or implied to create a trust, that is to say, an intention to allow the property to descend to the heirs of the estate under the promise of these heirs to convey their interest to the wife of the deceased, we have a resulting trust.

In both cases we have involuntary trusts, and in both cases the practical result is the same. In one case the fraud would lie at the root of the transaction, and the trust, springing from the fraud by which the title was obtained, would be constructive. In the other, the transaction is based upon the promise itself, and the fraud upon the refusal to carry it out after the title to the property had been obtained. The trust, whether it be called constructive or resulting or involuntary springs from the intention of the testator and the promise of the legatee; and a trust clearly exists where heirs and next of kin "induce their ancestor or relative not to make a will by promising in case his property falls to them through intestacy to dispose of it, or a part of it, in the manner indicated by him. The rule is founded on the principle that the legacy would not have been given or intestacy allowed to ensue unless the promise had been made; and, hence, the person promising is bound in equity to keep it, as to violate it would be fraud. Amherst College v. Ritch, 151 N. Y. 282, 37 L.R.A. 305, 45 N. E. 876; Mead v. Robertson, 131 Mo. App. 185, 110 S. W. 1095; McDowell v. McDowell, 141

Iowa, 286, 31 L.R.A.(N.S.) 176, 133 Am. St. Rep. 170, 119 N. W. 702.

It is clear, also, that § 5366 of the Compiled Laws of 1913, which provides that "no implied or resutling trust can prejudice the right of a purchaser or encumbrancer of real property and without notice of the trust," does not apply.   As .far as the bank's right as a purchaser at the sale was concerned the proof shows that the deed from the heirs was recorded before the sale.   As far as its rights as an encumbrancer are concerned it is clear that the debtor, Ingebrigt Arntson, had no interest which was subject to the levy.

The deed did not constitute the foundation of the trust, but evidence merely; and, as we have before said, the trust could have been enforced against the lien of the bank even though no deed had been executed. The property, in short, never belonged to the children, nor to the said Ingebrigt Arntson.   The bank certainly had no claim upon it prior to the death of the deceased, as the deceased owed it nothing (§ 5366) and the recording statute merely protects creditors and purchasers against secret trusts upon and unrecorded conveyances of the property of their debtors, and of property which, if it had not been for the unrecorded conveyances, would have been properly subject to their debts.

Since, indeed, the heirs would have been compelled to convey to their mother, it is immaterial whether the deed was executed after the levy of the execution or not.

Nor can the defendant bank complain on the ground that, by the means adopted, the deceased avoided the requirements of the statutes which relate to the execution of wills.   The strictness of the law in relation to these matters is not due to any solicitude for the creditors of the heirs, but to a desire that the real intention of the deceased shall be ascertained and prevail.

The judgment of the District Court is reversed, and the cause is remanded with directions to enter judgment quieting the title of the plaintiff against the claim of the defendants.

BIRDZELL, J. (concurring specially).   I concur in the reversal of the judgment and in the reasons given therefor, which are stated in paragraphs 2, 3, 4, 5, 7, 8, and 9 of the syllabus.   Inasmuch, however, as the trust in this case is executed, I express no opinion as to whether or not a trust created under the circumstances shown to have existed in

this case is one that could be enforced if it remained executory. I am of the opinion that the transfer cannot be said to have been fraudulent and void as to creditors, nor one subject to a lien in favor of creditors upon a larger interest of the judgment debtor than he himself claimed under the circumstances; and I deem it unnecessary to say that an enforceable constructive trust existed.

I am authorized to say that Mr. Justice CHRISTIANSON concurs in the view herein expressed.