LAUREAS J. WEHE, Plaintiff and Appellant, v. ARTHUR C.
WEHE, Defendant and Respondent, and ELIADA P. WEHE,
Laureas J. Wehe, Herbert C. Wehe, Charles L. Wehe, Jr., Delia
L. Wehe, Blanche H. Ray, Formerly Blanche H. Wehe, Maude
L. Stansberry, Formerly Maude L. Wehe, Alice G. Wehe, et al.,
Defendants-Appellants.

(175 N. W. 366.)

**Homesteads — validity of husband's conveyance of statutory homestead to
wife.**

1. A deed from husband to wife. of a statutory homestead in 1891 is valid
although the wife did not concur and join in the execution thereof, pursuant
to the law then existing.

**Trusts — conveyance by husband to wife.**

2. In an action to determine adverse claims, where it appears that in April,
1891, the father deeded the land involved to his wife in order to protect his home
and save the land from demands of creditors, although it was unnecessary for
him so to do by reason of the land being a statutory homestead and therefore
exempt from the claims of the creditors, and where the father thereafter acqui-
esced in such conveyance and made no attempt to secure reconveyance until
1916, after his wife had died, it is *held* that in equity no trust of any kind
arose and the father is not in a position to claim reconveyance.

**Husband and wife — acts insufficient to show adverse possession.**

3. In such action, where the father, after such conveyance to his wife in
1891, farmed and occupied the premises until 1896, and thereafter removed
from the same, but managed and controlled the land through tenants and gen-
erally paid the taxes thereon until the year 1913, and in other ways treated
the farm as his own, it is *held* that such acts were not hostile to the title of
the wife and do not constitute acts of adverse possession.

**Trusts — will as memorandum creating constructive trust.**

4. In such action, where the wife, who had received such deed, made a will
in October, 1913, devising a legacy of $1,000 to each of their three children,
with a division of the residue of her estate among her remaining children,
share and share alike, and, where, on the day following, she executed a deed,

NOTE.—On effect of conveyance of homestead by husband to wife, see note in 69
L.R.A. 379.    On constructive trust in deed of homestead by husband to wife,
with proviso attempting to derogate from her right to survivorship, see note in
1 L.R.A. (N.S.) 312.

absolute in form, conveying the land involved, being the entire property possessed by her, to the three children named as legatees in the will, and thereafter in February, 1914, again made a will containing the same terms, and where it appears that the reason for the execution of such deed was that the mother feared that an attempt might be made to break the will, and where, further, it was the understanding that the property should belong to the mother until her death, and that the persons designated as grantees in the deed should carry out the intention of the mother as expressed in the will in the devises therein made, it is *held* that such deed imposed a constructive trust upon the grantees named to carry out the intention of the grantor as expressed by her in the will, and that the will is a memorandum in writing of the terms of such trust.

Opinion filed July 1, 1919.

Action to determine adverse claims.

From a judgment of the District Court of Nelson County, *Cooley,* J., in favor of the defendant Arthur C. Wehe, the plaintiff and the other children of the deceased mother appeal, and demand a trial de novo.

Reversed and remanded for further proceedings.

*L. J. Wehe,* for plaintiff and appellants Eliada P. Wehe, Herbert C. Wehe, and Laureas J. Wehe.

*D. V. Brennan,* for defendants and appellants Charles L. Wehe, Jr., Delia L. Wehe, Blanche H. Ray, Maude L. Stansberry, and Alice G. Wehe.

"In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direction." 3 Pom. Eq. Jur. 3d ed. § 1031; 2 Washb. Real Prop. 520; Williams v. Williams (Iowa) 78 N. W. 792; 39 Cyc. 104.

The law is quite well established that a resulting trust in real property may be established by parol evidence. 3 Pom. Eq. Jur. 3d ed. § 1041; Sanford v. Sanford, 31 N. D. 190; Gates v. Kelly, 15 N. D. 639; Smith v. Strahan, 16 Tex. 314, 67 Am. Dec. 622; Amidon v. Snouffer (Iowa) 117 N. W. 44; 39 Iowa, 159; 31 Ind. 56; 29 Cyc. 108; N. D. Comp. Laws 1913, § 7871, subd. 2.

In such cases as this, courts of equity do not enforce the trust in violation of the Statute of Frauds, but relief is granted as based on

the fraud arising out of the confidential relation, or because of the facility for practising it. Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088; Hanson v. Svarverud, 18 N. D. 550, 120 N. W. 550; Hayne v. Herman, 97 Cal. 259, 32 Pac. 171; Allen v. Jackson, 122 Ill. 567, 13 N. E. 840; 39 Cyc. 27.

*Frich & Kelly,* for respondent.

It is universally held that a mere unexpressed understanding is wholly insufficient to establish a trust, in the absence of actual fraud. Adams v. Adams, 79 Ill. 517; Pierson v. Pierson (Ind.) 25 N. E. 342; McGinnis v. Barton (Iowa) 33 N. W. 152; Collar v. Collar (Mich.) 13 L.R.A. 621; Loomis v. Loomis, 1 L.R.A.(N.S.) 312.

BRONSON, J. This is an action to determine adverse claims to 152 acres of land in Nelson county. The parties to the action are the children of Charles L. Wehe and Pauline E. Wehe, both deceased. The action was originally instituted in February, 1916, by Charles L. Wehe, the father; it came to trial in November, 1916. Before its determination in the trial court, but after his testimony had been taken, the father, on December 20, 1916, died. His son, the executor of his will and one of the defendants herein, was substituted by order of court as party plaintiff on March 13, 1917.

On April 7, 1917, the trial court made findings adjudging the defendants Arthur C. Wehe, Eliada P. Wehe, and Herbert C. Wehe to be the owners in fee of the land, and quieting title in them, and ordering, further, a judgment against the defendant Laureas J. Wehe in favor of Arthur C. Wehe, for $136.01 on account of rents and profits of such land, for the year 1915. Pursuant thereto, on May 21, 1917, judgment was entered. The plaintiff and the defendants, excepting Arthur C. Wehe, have appealed and demand a trial de novo.

The facts substantially are as follows:

The father squatted on this land in 1883. In February, 1891, a United States patent thereof was issued to him. On April 13, 1891, the premises then being a statutory homestead, he gave a warranty deed of the same to his wife. The reason, as stated in his testimony, why he placed title in his wife, was that creditors might not get at it; that he might protect his family. At the time there was apparently a

judgment for a large amount against him, and thereafter, under execution, this land, as well as other land, was subjected to the levy thereof, but this land was exempted not only by reason of the deed given, but also on acount of its being a homestead. The parents lived on the land until 1896, when they moved to Grand Forks, and there they subsequently resided up to the time of their death. The father continued to operate the farm, pay the taxes, and in a general way to receive the profits therefrom up until 1913, when on account of, or to avoid, some family troubles, the mother then began to look after and operate the farm. Sometime in 1900 the mother made a will, which was filed in the county court. This will was later taken out by Arthur C. Wehe about the time he visited his mother, on or about October 30, 1913, at Grand Forks, when, in accordance with his testimony, a new will was drawn up and signed by the mother, which devised $1,000 each to her children the defendants Arthur C. Wehe, Eliada P. Wehe, and Herbert C. Wehe, and the rest and residue of her estate to her other children, share and share alike. Likewise, in accordance with Arthur C. Wehe's testimony, on the morning of October 31, 1913, the mother executed a warranty deed conveying the land to said Arthur C. Wehe, Eliada P. Wehe, and Herbert C. Wehe, mentioned as legatees in the will made the night before. Arthur C. Wehe further testified that this will so made the night of October 30th was subsequently destroyed by his mother, and a new will executed by her sometime in the month of February, 1914, at Grand Forks, at her home, containing the same terms, and dated the same day as the will so destroyed. This will was offered in evidence. It designates the defendant Arthur C. Wehe as the executor. It is witnessed only by Arthur C. Wehe and Eliada P. Wehe, two of the children named as legatees therein. As a reason why such deed was executed, Arthur C. Wehe further testified, that his mother was afraid the will might be attacked, and it was therefore proposed that the deed be given to the three of them; that there was an implied understanding that the will should be used as a memorandum in connection with the deed; that it was the mother's wish that the land so be disposed upon her death as provided in the will; that, out of this land, the three grantees in the deed should each get $1,000, and that the surplus remaining, if any, after the sale of such

land, should be divided among the remaining children. That there was further an implied understanding that the mother should receive the income and receipts off the land so long as she lived. In another place, he directly testified that the deed was not an absolute deed, but it had connection with the will, and that it was his wish and desire to carry out the instructions of his mother concerning the disposition of the land.

In the year 1914, Arthur C. Wehe looked after the land. On October 13, 1914, the mother died. Shortly prior to that time, on October 5, 1914, the deed of the mother to the children was recorded. On October 28, 1914, the will dated October 31, 1913, was filed in the county court. On November 3, 1914, a statement was rendered, covering the crop on the land for the year 1914, made by Arthur C. Wehe, showing a balance of $37.45 due the mother. After the death of the mother this will and deed became known to the other children not mentioned therein, and apparently difficulties and troubles concerning this land rapidly arose between the father and all of the children.

In January, 1915, Herbert Wehe appointed the defendant L. J. Wehe as his attorney and agent to look after his interests in the land. Likewise, on February 13, 1915, Eliada P. Wehe did the same. Subsequently on February 4, 1916, both Herbert Wehe and Eliada P. Wehe executed a full power of attorney to said L. J. Wehe, authorizing him to manage, farm, rent, sell, or transfer their right and interest in the land. In 1915, said L. J. Wehe took charge of the farm.

In this record, therefore, two of the grantees named in the deed, Eliada P. Wehe and Herbert Wehe, seek to repudiate such deed as an absolute deed, and join with the remaining appellants in the contentions made to set aside the judgment of the trial court, so determining in their favor.

There are various and conflicting contentions made by the appellants upon this appeal, dependent upon the construction that the court may give to the two deeds and the will involved. Upon the record herein there are presented the following major legal questions:

1. The effect of the deed from father to mother in 1891.

2. The question of the adverse possession of the father, after the delivery of such deed.

3. The construction to be given the deed from the mother to the three children dated October 31, 1913.

1. *The deed of father to mother in 1891.* The deed from husband to wife covering the homestead was not void for the reason that both did not concur in and sign the same joint instrument. Dak. Comp. Laws 1887, § 2451. The homestead statute was enacted for the purpose of the protecting and preserving the home for the benefit of the family as a whole. Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684. The disabilities of coverture under common-law principles was removed by § 2590, Dak. Comp. Laws 1887, now § 4411, Comp. Laws 1913, which provides that either husband or wife may make any agreement with the other concerning the property which the other might make, if unmarried. Under this statute this homestead protection of the law cannot be devested without the consent of both spouses. In a conveyance from husband to wife there is no intention to devest the wife of her right, or the family, of this homestead protection. The deed is therefore valid as against such objection. Furrown v. Athey, 21 Neb. 671, 59 Am. Rep. 867, 33 N. W. 208; Harsh v. Griffin, 72 Iowa, 608, 34 N. W. 441. See also Olson v. O'Connor, 9 N. D. 504, 81 Am. St. Rep. 595, 84 N. W. 359.

The appellants, however, contend that, there was no real intention of the father to part with his title. That there was no consideration for such deed. That the father, not knowing that the homestead was exempt from seizure to satisfy claims or judgments of creditors, through mistake conveyed to his wife in order to protect the family and save his home. That therefore a trust was created. Clearly, this contention cannot be sustained. The intention of the father to place the title of the land absolutely in the mother is clearly disclosed in the record, by his own testimony. The relation of the parties furnished a sufficient consideration if any was needed. The fact that he was ignorant concerning his legal exemptions, or that the conveyance, legally, was not in fraud of creditors, does not serve to alter his real intention and purpose at the time, or thereby to create in his favor a trust of any kind, no fraud or misrepresentation being practised by

the mother, and no agreement to recovery being shown. Further, for many years after the parties removed from the premises and the property lost its homestead character, the father acquiesced in this title residing in the mother, and made no claim therefor until after the death of the mother. There might have been possible judgments or claims that might have attached to this property, if the title had been in him.

Upon plain principles of estoppel as well as upon equitable principles that apply when a reconveyance is sought of a deed made to defraud creditors, the father was in no position to assert a trust or claim a reconveyance. 20 Cyc. 617; 21 Cyc. 1302; 16 Cyc. 791, 804.

The trial court, therefore, did not err in finding that such deed from father to mother was an absolute deed.

2. *The adverse possession of the father:* The appellants further contend that the continuous occupation and management of the farm as well as the payment of the taxes after the execution of such deed constituted adverse possession. This contention is wholly without merit. There was no such actual open, notorious, exclusive, continuous and hostile possession under a claim of right adverse or in hostility to the claim of the mother which, upon elemental principles, is required to establish adverse possession. Comp. Laws 1913, § 7365; 2 C. J. 50, 122, 135, 156; Ward v. Cochran, 150 U. S. 597, 37 L. ed. 1195, 14 Sup. Ct. Rep. 230.

3. *The effect of the deed from mother to the three children dated October 31, 1913:* The appellants contend that either the deed is in the nature of a testamentary disposition of the property, or it created a constructive trust for the benefit of the persons entitled by law to her estate. Upon this phase of the case the question presented is not without difficulties. It is clear that, upon the testimony of Arthur C. Wehe concerning the intention of his mother, the deed given was not intended as, and is not, an absolute deed. In fact, he so directly testified. He further testified, as hereinbefore stated, that the will was to be used as a memorandum in connection with the title conveyed by this deed; that it was his mother's wish that the land be so disposed upon her death, as provided in the will.

It is the opinion of the writer, after full consideration, that this

deed, under all the circumstances in the record, must be construed to be a testamentary disposition, in order to give any force and effect to the real intention and purpose of the mother.

In arriving at this conclusion the evidence is considered as follows:

The mother, practically at the same time that the deed was executed, made a will which gave to the three children the same interest as Arthur C. Wehe testified that they were supposed to receive by the deed. The deed, after being so made, was not recorded until very shortly before the death of the mother. The grantees therein did not attempt to consider the land as theirs, but treated it as belonging to the mother, and so the land was so considered by all the children until the mother died. Furthermore, in the month of February, 1914, the mother made another will exactly the same in terms as the will made in October previous. Certainly, if she had intended to dispose presently of her property by the deed there was no occasion for her making another will. It is not disputed that this land is the entire property that she possessed. The only reason that is given why she made this deed was because she feared that the will might be broken. In other words, the only inference to be drawn, after full consideration concerning her intentions, is that she might be better assured that after her death the property involved would go to the persons in the manner that she had designated it to go in her will. Furthermore, the testimony of Arthur C. Wehe, that the will was to be used as a memorandum in connection with this deed, to aid in arriving at the conclusion that the real intention of the parties was to make, by the instrumentalities of the will and the deed, a testamentary disposition of the property of the mother effective upon her death. The acts of the parties who knew about this will and about this deed confirm in every respect this intention as so construed.

In this connection, it is to be noted that the will, as yet not probated, was made subsequent in point of time to the deed; this is an element to be considered in determining the intention of the testator to make a testamentary disposition of the property covered in the deed, which all of the parties concede did not convey and was not intended to convey the land as prescribed in the deed. The deed therefore, so construed, would operate to pass no title to the grantees therein. Dev-

lin, Deeds 3d ed. §§ 855c, 309a, 854; see notes in 1 L.R.A.(N.S.) 315, and 89 Am. St. Rep. 494.

The majority of this court, however, are of the opinion that effect should be given to the deed as a deed; that the intention of the testatrix fairly construed was to pass a title in *præsenti* to the three grantees named therein upon a trust to carry out and perform the terms of disposition contained in the will; that this interpretation gives full effect to the intention of the testatrix, upholds the deed, and can be sustained upon principles of equity to prevent fraud. The evidence fully warrants the imposition of a constructive trust upon the grantees as opposed to the contention of the respondent and the holding of the trial court that the deed was absolute. The will properly serves all of the purposes of a memorandum in writing, expressing in specific terms the trust imposed. Hanson v. Svarverud, 18 N. D. 550, 120 N. W. 550; Arntson v. First Nat. Bank, 39 N. D. 408, L.R.A.1918F, 1038, 167 N. W. 760. In terms of the final result, the intention of the testatrix will be substantially fulfilled under either construction. It is therefore held by the majority of this court that the deed in question imposed a constructive trust upon Arthur C. Wehe, Eliada P. Wehe, and Herbert C. Wehe, the grantees in the deed, pursuant to the terms of the will, and that the will shall be used as a memorandum of the duties and obligations of such grantees, as trustees.

It is therefore ordered that the judgment of the trial court be reversed and the case be remanded for further proceedings in order to carry out and execute the duties of such grantees as trustees of the title consonant with this opinion. The appellants will recover the costs of this appeal.

CHRISTIANSON, Ch. J., BIRDZELL and GRACE, JJ., concur.

ROBINSON, J. (concurring specially). In this case the plaintiff and the defendants, except Arthur Wehe, appeal from the decision of the trial court. This is a Wehe case,—a case in which one of the ten young Wehes has been trying to impose on his poor old dad, and to bring down his gray hairs with sorrow to the grave.

This is an action to quiet title to a quarter section of land in Nel-

son county. Arthur Wehe is the only defendant who claims title, and all the others appeal from a judgment in his favor. He claims title under a deed made by Charles Wehe, now deceased, to his wife, and a deed by her to him. In 1883 Charles Wehe settled on the land as a pre-emption. Then he turned it into a homestead and made final proof in 1890 and received patent in 1891. In April, 1891, to protect himself and his family from claims of creditors, he foolishly made a paper deed purporting to convey the land to his wife. The land was then the homestead of Charles Wehe and was occupied as such by himself and family. The deed was made without any consideration and without any purpose to part with the title and possession of the land. It was not executed and acknowledged by the husband and wife; they did not both concur in and sign the same joint instrument. Comp. Laws, § 5608. In November, 1916, the action was brought to trial. The testimony of Charles Wehe shows that the deed was made without any consideration and without any purpose to pass the title or possession of the land; that until the time of the trial he was continuously in possession of the land, as owner in fee, and paid all taxes levied against it. He leased, farmed, and used the land as his own; he put in evidence twenty-two tax receipts, showing that in every year he paid the taxes in his own name, as the owner of the land; and it appears that he never accounted to any person for rents or profits. He cultivated and improved the land and built on it a residence, barn, granary, blacksmith shop, and such like. The property all belonged to Charles Wehe, and no person claimed any adverse title.

Now it seems that on October 31, 1913, Pauline Wehe made a will, which was drafted and witnessed by Arthur C. Wehe. The will gave to Arthur and two other children, to each of them, $1,000, to be paid out of the real and personal property. It made Arthur executor. Then, on the same day, she made a deed of the land,—a very questionable deed,—in which, as it now appears, the grantees are Arthur C. Wehe, Eliada Wehe, and Herbert Wehe. The last two persons knew nothing of the deed until over a year after it was executed and until after the mother's death. By answer they disclaim any title under the deed, and aver that it was made as a part of the will; that it did

not contain the name of Arthur Wehe, and that he inserted his own name as a grantee after the execution of the deed.

The mother had no claim or title to any other land or any other property. The express consideration is $1. The deed and the will were drawn by Arthur, and he held possession of the same, and the whole matter was kept secret until the day after the funeral.

There are three fatal objections to the title claimed by Arthur Wehe:

(1) The facts speak louder than words, and show conclusively that the deed was obtained by fraud and undue influence. The grantee was the mother of ten children. Her son, Arthur, drafted the will which she signed and in which she remembered all her children. Then in a few hours he induced her to make a warranty deed of her property, as he says, to himself and two other children. The other children disclaim title under the deed, and aver that it was made as a part of the will and that it did not contain the name of Arthur Wehe.

(2) The mother never had title to the land, because, when the deed was made to her in 1891, the land was occupied by Charles Wehe and his wife as a homestead, and they did not concur in and sign the same joint deed.

(3) The deed to Mother Wehe was made without any consideration, and not for the purpose of conveying any title to her. And for more than twenty-two years after the date of the deed, and until his decease, Charles Wehe remained in open, exclusive, and undisputed possession of the land as owner in fee. He cultivated and improved it, rented the land and made valuable improvements on it, and paid all taxes against it, as shown by the tax receipts. His title was absolute and perfect.

The judgment should be reversed and judgment entered to the effect that during his life and at the time of his decease Charles L. Wehe was the owner in fee of the land described in the complaint, and that his title be quieted and confirmed; and that the defendants, and each of them, and all persons claiming under them, be forever barred from any title or interest in said land, except as the legal heirs of Charles L. Wehe; that the plaintiff and the appellants do have and recover from Arthur C. Wehe, defendant and respondent, the costs and disbursement of the action and the appeal, the judgment to be without

prejudice to the rights of the executor to have and recover from Arthur C. Wehe for the use of said land and for any rents and profits that he may have received from it, and to charge the same and the costs of this action against any interest he may have as heir of Charles L. Wehe, deceased.