[File No. 7312]

THOMAS JOHNSON, Appellant, v. ANNA ALBIN LARSON, Respondent, and IDA McKOANE, MAY ANGRINSEN, JOHN EGGE, and TILLIE OBERG, Defendants and Appellants.

(56 NW2d 750)

Opinion filed January 26, 1953

410·

*Walter O. Burke,* for appellants.

*Eugene A. Burdick,* for respondent.

SATHRE, J.   The plaintiff, Thomas Johnson, brings this action against the defendants to quiet title to a quarter section of land situated in the county of Williams, State of North Dakota and described as follows:   The South half of the Southwest quarter (S½ SW¼) of Section Twenty-nine (29) and the North half of the Northwest Quarter (N½ NW¼) of Section thirty-two (32) in Township One Hundred Fifty-nine (159) North of Range One Hundred Two (102) West of the Fifth Principal Meridian, North Dakota, containing 160 acres, more or less.

The defendants Anna Albin Larson, Ida McKoane, May Angrinsen, are sisters of the plaintiff and John Egge is a brother of the plaintiff.   The defendant Tillie Oberg is a daughter of a deceased sister of the plaintiff and defendants.

The complaint alleges that on the 7th day of September, 1935, one Mathia Egge made, executed and delivered to the defendant

Anna Albin Larson a special warranty deed covering the land described in the complaint. This deed was filed for record in the office of the register of deeds of Williams county, North Dakota on the 20th day of September 1935, and was duly recorded in Book 80 of Deeds on page 346. The complaint further alleges that said deed was executed without any money consideration whatsoever and was made, executed and delivered with a specific understanding and agreement that the grantor was to have the exclusive occupancy of the said premises during her natural life and that after her death said property was to be deeded to and divided among the children of the said grantor Mathia Egge, share and share alike. Mathia Egge died on the 5th day of June 1940 and left surviving her as her heirs, the plaintiff and defendants in this action.

The complaint then alleges that notwithstanding the said understanding and agreement, the defendant Anna Albin Larson refused and neglected to execute a deed covering the premises described in the complaint and that she has collected rents and profits from the said land ever since the death of said Mathia Egge and that she has failed to make any accounting whatsoever of the rents and profits which she has received from the said land and that she has failed to account for the proceeds from the sale of buildings situated on said lands and has failed and neglected to pay any part of said amounts to any of the other children of the said grantor Mathia Egge.

Judgment is demanded that the plaintiff and the defendants be decreed to have an undivided one sixth interest in the land and that the defendant Anna Albin Larson be required to make an accounting of the use and occupancy of the land and the proceeds of the sale of the buildings.

The defendants Ida McKoane, May Angrinsen, John Egge and Tillie Oberg filed an answer admitting all of the allegations in the complaint.

The defendant Anna Albin Larson answered separately admitting that the said Mathia Egge was the owner of the property described in the complaint and that as such owner she deeded the same to the defendant Anna Albin Larson. She denied specifically that the deed from Mathia Egge to herself was

executed without any money consideration or with any under-standing or agreement that the grantor was to have the ex-clusive occupancy of said premises during her natural life, or that said property was to be deeded and divided among the children of said Mathia Egge, share and share alike. By way of counterclaim she alleged that she had an estate in fee simple in the property described in the complaint and that she was entitled to the immediate possession of said property. She then demanded judgment that title to the premises be quieted in her; that the claims of the plaintiff and the other defendants be ad-judged null and void and that they be decreed to have no estate or interest in or lien or incumbrance upon said property.

The defendant Anna Albin Larson filed an amended answer alleging laches on the part of the plaintiff in bringing the action, and that the cause of action, if any, accrued more than ten years prior to the commencement thereof and that the same is barred by the statute of limitations.

The case was tried without a jury before the Honorable Roy A. Ilvedson, Judge of the District Court at Williston in the county of Williams, State of North Dakota on the 13th day of March 1951. At the close of the hearing on said day an adjourn-ment was taken to enable the attorneys to procure further evi-dence and exhibits to be submitted to the court at a future date.

The hearing was resumed at Williston, North Dakota on the 11th day of June 1951. The district court held that the plaintiff had failed to establish a cause of action and ordered judgment to be entered in favor of the defendant Anna Albin Larson adjudg-ing her to be the owner in fee simple of the premises described in the complaint. The plaintiff Thomas Johnson and the other defendants have appealed and have demanded a trial de novo in this court. The facts developed at the trial are substantially as follows:

Mathia Egge is the mother of the plaintiff and defendants Anna Albin Larson, Ida McKoane, May Angrinsen, John Egge and the grandmother of Tillie Oberg, the daughter of a deceased daughter of the said Mathia Egge. On September 7th, 1935 Mathia Egge executed a special warranty deed of the property described in the complaint to her daughter Anna Albin Larson.

She was assisted in the drawing of the deed by one Ole A. Lee, who had the deed recorded in the office of the register of deeds in Williams county and thereafter mailed it to the said Anna Albin Larson at her address at Spokane, Washington.

Ole A. Lee was not present at the trial, but it was stipulated by the parties that a letter written by him to Burdick and Burdick dated March 12, 1951, defendant's exhibit "F", be admitted in evidence and that if said Ole A. Lee were present he would testify according to the tenor thereof. The letter is as follows:

"In regard to your letter of March 2nd, 1951 about Anna Albin Larson's deed to the farm of her Mother Mrs. Mathia Egge. Mrs. Egge was staying at my place, she was worrying about her farm, what would become of it, as there was no income from the farm, and the taxes were piling up just the same, Anna has been sending her money partly for taxes, and partly for living, and was very good to her mother.

Mrs. Egge said that Anna should have the farm, I agreed with her on that, and offered to help her with the deed, if she decided to do so, this was in 1934.

I rented out my farm, the fall of 1934 so Mrs. Egge was not staying at my place any longer in the fall of 1935 Mrs. Egge came to my place, and had decided to give Anne the farm as a gift, I helped her with the deed to the farm."

Two other letters were introduced in evidence as defendant's exhibits D and E, written by the Rev. A. J. Sheldahl of Fergus Falls, Minnesota, during the first part of March 1951. He was well acquainted with Mathia Egge, having been her pastor and spiritual adviser at Grenora for several years. It was agreed by counsel that if Rev. Sheldahl were present he would testify in accordance with the contents of exhibits "D" and "E". They are as follows:

"In regards to my contacts with Mathia Egge of Grenora, N. Dak. at the time she decided to deed her property, to her daughter, Mrs. Albin Larson.

As I remember Mrs. Mathia Egge at that time I believe that she was in possession of her mental faculties. I cannot re-

member anything that would lead me to believe that she was not of sound mind.

She came to me for help to carry out the decision she had made concerning her farm property. She had decided to deed it to her daughter Mrs. Albin Larson.

This is the explanation she gave me of why she was intending this act. For some time, (just how long I don't remember) she had been unable to pay the taxes on her farm property. She also knew that it was beyond all possibility that she would be able to do so. May I insert here the well known fact that because of prevalent weather conditions at that time it was virtually impossible to take any income from land. She further explained that her daughter Mrs. Albin Larson had been paying the taxes and that if the farm property was to remain in her (Mrs. Mathia Egge's) possession the only person who would or could continue to pay the taxes would be Mrs. Albin Larson.

That justice might be done to Mrs. Larson after such time that Mrs. Mathia Egge should have died she wanted the farm property deeded to her while she (Mathia Egge) was still living. She further felt that this was the only way the farm would be kept in the Egge family.

Mrs. Egge came to me her pastor for the purpose of getting help in how to go about effecting the transfer of deed from herself to her daughter. She of course knew nothing about such proceedings. Hence the letter I wrote to her daughter Mrs. Albin Larson that such proceedings might be done thru the proper legal channels.

As I remember our conversation Mrs. Albin Larson knew nothing of her mother's intention. If she did Mrs. Egge did not bring it into the things she told me.

I have set down these facts based upon memory of the statements made to me concerning her will with her property while she was still alive, that is the will of Mathia Egge. That she had carried them out, I did not know until the letters from Burdick came to me."

"Inclosed is my statement of facts as I remember them in the Mathia Egge property transfer. I sincerely hope they will

keep inviolate the will and act of a good woman. As I remember her she desired no injustice to any of her family. She accepted things as they were and acted accordingly. I have written the facts as I remember them, not particularly to help Mrs. Larson, who has this in her favor that she did try to help her mother in very difficult times but rather that justice might be carried out on behalf of a person now deceased. Mrs. Egge was often in our house. She surely was an honest upright person.

I thank you sincerely for relieving me of the need to come to Williston. If it had been summer time I would have welcomed the opportunity to come, even to the extent of assuming some of the cost myself. You see then I could have visited my many friends now it would have been a hardship due to weather conditions and the press of daily duties.

Will you kindly say to Mrs. Larson that whatever the out come of the trial may be it was her Mother's will that she should have the farm. Also that her mother fully knew what she was doing. It grieves me deeply that this trouble has arisen. Such a possibility never entered the heart of Mrs. Egge. So goes life however for a generation whose mission and understanding of life is focused almost wholly on materialism.

I did try to refrain from prsupteous (presumptuous) statements given tho I knew them to be true, that the facts given would be acceptable to opposing counsel."

The plaintiff, Thomas Johnson, and the defendant Ida Mc-Koane testified that on the morning of June 5, 1940, the day that the mother Mathia Egge, died, they ate breakfast together with the defendant Anna Albin Larson at Williston, North Dakota. Thomas and Ida testified that while they were eating breakfast together the defendant Anna stated that she would divide the land among the sisters and brothers. Anna however denied this and stated that she could not recall that she ever made such statement at that time. Ida McKoane testifying for plaintiff admitted that sometime prior to July 6, 1949 she received a letter from her sister Anna, the defendant, complaining about her brother Thomas that he was bothering her very much about the land and was drinking heavily. Ida replied to this letter July 6, 1949, and her letter was admitted in evidence without

objection as defendant's exhibit A. The part of the letter pertinent to the matter before us is as follows: referring to her brother the plaintiff.

"They are a funny family, Tom should have gotten a job and stayed put. I just cannot understand people they just want to roam from pillar to post. What is the matter with him? I am going to write a letter myself. Anna take my advise and don't let it worry you. Don't get upset—just look out for Albin and Anna. If you are going to start worrying over them all your health won't take it. Now please cut it out and take care of yourself. Anna to keep him satisfied give him some of crop but tell him you will bank it for him for he will just drink it up. As far as the farm, you are the one that kept it up and spent your money and I will tell him so. It was you that paid for the burial of mother. They kept her money. It makes me tired to listen to them. When they never save a penny. So please don't bother yourself and worry take care of Etta for I know you have always been good to him. Does he drink a lot, Anna? Let him sell the farm and he will sure as you live he will drink it up. Be smart and keep it. You will see the folks."

Plaintiff admitted the defendant Anna had sent money to their mother but he did not know how much. He testified further that in the spring of 1935 his mother wanted to deed the land to him, that she intended to apply for old age assistance and she did not want it to go against the land. He said further that he consulted an attorney at Williston and that he was told that it would be a fraud for him to take the deed so he did not accept it. His mother talked to him later and said that she would deed the land to Anna so there wouldn't be a pension against it. That his mother said at that time, "when I leave it in Anna's name it is just like mine she will divide it with the rest of us."

Another letter written by Mathia Egge to her daughter the defendant, Anna Larson on Feb. 15, 1939 was introduced in evidence as defendant's exhibit C. It was written in the Norwegian language and was translated by Lillie Oberg. The part of it translated in the English language is as follows:

"I had Lillian write you that every thing was alright at the

court house, in Williston, so that we do every thing right for the government, so that there won't be any trouble. For that can, make trouble.

Write and find out so that everything is right, so that no one can stick there nose in.

Ole Lee said if there was something, call on him, he can prove that you have helped me.

He is not here but you can write to him, so that will clear me from all talk.

I have it good with food and drink. I can board with them and that will be the best.

Looks as if there will be no old age pension to get.

Greetings from us all from your mother, and write."

The defendant Anna Albin Larson testified in substance as follows: She had never had any talk with her mother about the land and knew nothing about the deed until she received it. She sent money to her mother at different times and in various amounts of $5.00 to $20.00. She was unable to state the total amount of money that she had sent to her prior to receiving this deed. In regard to this matter she testified as follows:

Q. Let's get an estimate here on your part as to how much, do you think you sent her over a period of 20 years, from 1916 to 1935?

A. That is 20 years you said?

Q. Approximately 20 years?

A. Well, that's pretty hard for me to really say.

Q. Could you say that you sent her as much as two hundred dollars a year?

A. I think I sent her that alright.

Q. You think you sent her that much?

A. Or close in there. Like I say, I wouldn't commit myself, because I am really not sure what I sent her.

Q. Do you believe you sent her that much each year?

A. I could have, yes.

Q. Do you believe you did?

A. I won't say maybe every year that amount but—

Q. Do you know what your mother did with the money?

A. Well, I supposed she used it for whatever she needed it best.

In the summer of 1936 she received a letter from the county welfare board of Williams County about the matter of her mother getting old age assistance. The substance of this letter was as to whether or not she would be willing to give a mortgage on this land to secure old age assistance for her mother since she had received a deed to the land. In the fall of 1936 she and her husband signed a mortgage to the public welfare board of Williams County so as to enable her mother to obtain old age assistance. She drove to Grenora in the summer of 1937 and visited her mother and her niece Lillie Oberg accompanied her. During this visit her mother told her that she had given her the deed to this land because she was the one that had helped her.

It was stipulated by the parties that the defendant Anna Albin Larson paid $596.00 in taxes after she received the deed from her mother that she paid old age assistance which her mother had received in the sum of $725.00, and that she paid $150.00 for her mother's casket, and $35.00 costs for enbalming, and that she put up a tombstone for her mother at the cost of $225.00; that she sold some buildings that were on the land for which she received $1100.00. The land in question was farmed by tenants during the years 1941 to 1949 and it was stipulated by the parties that the defendant Anna Albin Larson received various amounts, the proceeds of sale of crops from the land during those years.

It is the contention of the plaintiff that under the facts and circumstances surrounding the execution and delivery of the deed to Anna Albin Larson a constructive trust was created by operation of law and that Anna Albin Larson held the land in trust for all of her brothers and sisters the heirs at law of Mathia Egge. In support of this contention the plaintiff cites the case of Arntson v. First National Bank of Sheldon, 39 ND 408, 167 NW 760, LRA1918F 1038, and McDonald v. Miller,

73 ND 474, 16 NW2d 270, 156 ALR 1328. The case of Arntson v. First National Bank was decided on a state of facts entirely different from the facts in the case at bar.

The question in that case was whether the oral agreement between I. E. Arntson and his five sons relative to the disposition to be made of his land after his death created an implied trust.

He called his five sons and told them that he had not much property but that he wanted their mother to have it all and that she had to have someone to take care of her and he wanted the boys to deed it to her when he was gone, and that this will be as good as a will. The five boys agreed to this and so told their father who died a few days later, and about a month after their father's death, they deeded the land to their mother. In that case the court held that a constructive trust was created. We quote from the opinion.

"It is true as a general proposition that a mere breach of an oral agreement to convey the interest in land is not such a fraud as will create a constructive trust and justify the intervention of a court of equity, but 'where confidential relations prevail between the parties to an oral trust and the trust is violated, the law presumes that the influence of the confidence upon the mind of the person who confided was undue; and a case of constructive trust arises, not, however, on the ground of active fraud, but because of the facility for practicing it. Hayne v. Hermann, 97 Cal 259 32 Pac 171.'"

In the case of McDonald v. Miller, supra, it was held that where it is sought to establish a constructive trust the existence of a confidential relationship between the parties is of major importance.

In the case at bar, however, there is no proof whatever of any confidential relations existing between Mathia Egge the grantor and Anna Albin Larson the grantee prior to the execution of the deed. Anna Albin Larson knew nothing about the deed until she received it in the mail after it had been executed and filed for record; nor is there any evidence that the defendant Anna Albin Larson had any understanding or agreement with her mother with reference to a division of the

property after the execution of the deed. The letters from Rev. Sheldahl and from Ole A. Lee which were admitted in evidence by stipulation of the parties, clearly establish that it was the intention of the mother Mathia Egge to make an unconditional transfer of the land to her daughter Anna Albin Larson and she made such transfer by a special warranty deed, absolute in form, and thereupon delivered it to the grantee.

The grantee Anna Albin Larson testified that she sent money to her mother annually for many years prior to the execution and delivery of the deed, the amounts thereof being sometimes as high as $200.00 per year and this testimony is not contradicted by the plaintiff or the other defendants.

Implied trusts are governed by section 59–0106 NDRC 1943, which reads as follows:

"An implied trust arises in the following cases:

1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;

4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

We have carefully considered the facts, circumstances and the evidence in connection with the execution and delivery of the deed by Mathia Egge to the defendant Anna Albin Larson and fail to find anything giving rise to an implied trust under the provisions of the statute quoted.

The rule is well settled that in order to establish an implied or constructive trust the evidence must be clear and convincing.

In the case of Bodding v. Herman, 76 ND 324, 35 NW2d 561, this court said:

"The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 ALR 286, 307; 45 ALR 852; 80 ALR 198 and cases cited. See also Bogert on Trusts and Trustees 1422."

We quote also from 54 Am Jur Trusts, Sec. 620, page 478:

"The general rule is that oral proof of an express trust in realty or personalty which is not required to be in writing, or of facts giving rise to a resulting or constructive trust, must be received with caution. So reluctant are the courts to ingraft a trust by parol on the legal title to real estate, or to enforce an alleged parol trust in personal property, that there is perhaps no better-established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence. This rule requiring an extraordinary degree or certainty of proof in this class of cases has been applied or recognized in practically all jurisdictions, but with a wide variety of statements regarding the kind of testimony essential to establish the trust. It has been said that there is perhaps no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which ingrafts a parol trust upon a legal title. The courts are particularly emphatic in the statements and application of a rule where there has been delay in the assertion of the trust against one having legal title, resulting in difficulty in procuring witnesses and in establishing a defense, especially where the trust is based on communications or transactions with a person since deceased."

We are satisfied that the evidence is ample to sustain the counterclaim of the defendant Anna Albin Larson under the

special warranty deed from her mother Mathia Egge as against the claim of the plaintiff and the other defendants. It will not be necessary therefore to consider the defenses of laches and the statute of limitation.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.