Ludwig SPRENGER, Plaintiff and Respondent,

v.

Frederick H. SPRENGER, Defendant and Appellant.

No. 8259.

Supreme Court of North Dakota.

Oct. 20, 1966.

Drey & Tuntland, Garrison, and Vogel, Ulmer & Bair, Mandan, for appellant.

Waldron & Kenner, Minot, for respondent.

ERICKSTAD, Judge (on reassignment).

The amended notice of appeal filed by the defendant, Frederick H. Sprenger, asserts that this appeal is taken from "the judgment herein and from the whole thereof" and from "an order denying defendant's motion for judgment notwithstanding the verdict and for a new trial."

In specifications of error attached to and served with the amended notice of appeal the defendant specified the following as error:

I

Denial of the defendant-appellant's motion for judgment notwithstanding the verdict and a new trial.

II

Insufficiency of the evidence to prove the existence of a "confidential relationship" between the plaintiff and the defendant, the testimony showing only arms-length dealing between two adults, without confidential relationship.

III

Insufficiency of the evidence to prove an implied trust by clear and convincing evidence, the testimony showing at most no particular preponderance of the evidence either way, and being wholly inadequate to constitute evidence "clear and convincing."

IV

Insufficiency of the evidence to negative all other reasonable explanations of the transaction in question, since the evidence clearly shows other explanations as reasonable or more reasonable than the version of the plaintiff.

V

Refusal of the court to receive exhibit "M" offered in evidence.

As the defendant appealed not only from the judgment but also from the order denying his motion for judgment notwithstanding the verdict or in the alternative for a new trial, we shall first direct our attention to this phase of his appeal.

A motion for judgment notwithstanding the verdict calls for a review of the grounds assigned in support of the motion for a directed verdict. Erhardt v. Gold Seal Chinchillas, Inc., 144 N.W.2d 744 (N.D.1966).

When both sides had rested, the defendant moved for a directed verdict "for the reasons and on the grounds that the plaintiff has failed to sustain the burden of proof and has not proved an implied trust in this matter."

Had objection been made in this court by the plaintiff-respondent that the motion for a directed verdict was defective because it failed to specify with particularity wherein error was made or wherein the evidence was insufficient, we would be required to terminate further consideration of this motion at this point. As this objection was not made, we deem it waived.

It is true that when no objection is made by the opposing party for failure to specify with particularity wherein error was made or how evidence does, or does not, meet requirements, that by raising no objection the opposing party has

waived his objection. Clausen v. Miller, 63 N.D. 778, 249 N.W. 791 (discussed in Robbins v. Robbins, N.D., 70 N.W.2d 37). * * *

Sullwold v. Hoger, 110 N.W.2d 457 at 459 (N.D.1961).

The judgment in this case was based upon the verdict of a jury which read as follows'

We, the jury duly empaneled and sworn to try the above-captioned action do find in favor of the Plaintiff, Ludwig Sprenger and against the Defendant, Frederick Sprenger and do find that the Defendant holds title to the property in question in trust for the benefit of the Plaintiff.

■ Although neither side to this lawsuit has placed any significance on the fact that this is an equitable action (to impose a trust in favor of the plaintiff upon two quarter-sections of land held in the plaintiff's father's name and to require an accounting by the father for the income from said land), which normally would be a matter for the court to determine, we believe this should be considered.

Rule 39(c), N.D.R.Civ.P., becomes pertinent at this juncture. It reads as follows:

Advisory jury and trial by consent. In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

■ Before we attempt to construe this rule or consider its application in this case, we believe it is important to note that before the adoption of the North Dakota Rules of Civil Procedure this court in an 1899 decision, discussing the significance of the verdict of a jury in an equity case, held that the "Newman Law" applied only in common law actions wherein a trial by jury had been waived and in equity actions which were tried by the court without a jury. In other words, it held that in an equity action in which an advisory jury was called and a verdict was rendered by the jury, this court, on appeal, would not try the case anew. Peckham v. Van Bergen, 8 N.D. 595, 80 N.W. 759.

In that case the Court discussed the weight to be given the verdict of the jury as follows:

* * * It is true that the verdict of a jury is not binding upon the court in equity cases. The trial court is vested with a discretion to vacate such verdict in whole or in part, but this does not alter the fact that such verdicts are entitled to receive grave consideration at the hands of trial courts. Juries are not called, even in equity cases, as a mere formality; and their findings are seldom disregarded by courts of chancery, unless the same are clearly wrong. * * *

Peckham v. Van Bergen, supra, 80 N.W. at 761.

In the instant case there is no intimation anywhere in the record or in the briefs of the attorneys that the jury was merely an advisory jury.

The stipulation entered into by the attorneys for the respective parties, after reciting that the defendant was so ill that he could not appear on the date set for the trial of the case and that his appearance was necessary for the trial, concluded with an agreement to the effect that the case should be continued and that the term of the court should be held open until the case could be tried before a jury.

Having no precedent in our State to aid us in the interpretation of Rule 39(c) of our Rules of Civil Procedure, we have resorted to a study of the Federal Rules of Civil Procedure, from which our Rule 39(c) is derived.

Concerning this matter, Barron & Holtzoff has this to say:

> The purpose of Rule 39 is to make possible the complete fusion of law and equity in one form of civil action and to permit the time-saving trial of legal and equitable issues at one time without loss or surrender of substantive rights.

> If the issues are triable as of right to a jury, jury trial may be had on proper demand, and, in the discretion of the court, may be had even though there was no demand. If there is no right to jury trial, a demand is of no significance. In that event the court may try the case without a jury, or in its discretion may submit the issues to an advisory jury, or, if both parties consent and the court is so minded, may grant a regular jury trial in which all the incidents of jury trial as of right must apply.

> The common-sense procedure under the rule is extremely simple. The clerk places upon the jury docket all actions in which a jury trial has been demanded under Rule 38. All issues as to which a jury has been demanded are then tried by a jury unless the parties stipulate for trial to the court without a jury. The judge may transfer from the jury to the non-jury calendar all actions which the parties have consented to try without a jury and all others in which he finds no issues triable by a jury as a matter of right. This finding the judge may make upon his own initiative or upon motion. If the judge does not find that there is no right to a jury trial, and the parties do not object to the designation of the case as for the jury, the verdict of the jury has the same effect as if the case had actually been triable to a jury as of right, and is not advisory only.

2B Barron & Holtzoff, Federal Practice and Procedure § 891 (Rules ed. 1961).

The demand for jury trial contained in the plaintiff's complaint in the instant case read as follows:

> Plaintiff demands jury trial of the issues triable by jury.

The trial court, as well as both parties apparently determined that this was a demand for jury trial of the trust issue but not of the accounting issue.

Rule 52(a), N.D.R.Civ.P., sets forth when it is necessary for the trial court to make findings of fact. It reads as follows:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing temporary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

■ No objection has been made in the instant case to the fact that the trial court failed to make findings of fact. The trial court merely ordered judgment on the verdict. This is consistent with our determination that the jury trial in this case was with the consent of both parties, and that therefore the verdict has the same effect as if the trial by jury had been a matter of right.

■ Treating the verdict of the jury the same as if the trial by jury had been a matter of right in considering the issues raised by the motion for judgment notwithstanding the verdict or in the alternative for a new trial, the trial court said that it must review the record in the light of certain well-established rules of law as follows:

1. In determining the sufficiency of the evidence to sustain the verdict of the jury, the evidence must be reviewed in the light most favorable to the verdict.

2. The credibility of the witnesses and the weight to be given to their testimony are questions of fact for the jury to determine.

3. In considering the specification that the verdict of the jury is contrary to the evidence, the Court will assume the truth of the version of the evidence that tends to support the verdict.

Reviewing the evidence in the light of those rules, the trial court denied the motion for judgment notwithstanding the verdict or in the alternative for a new trial.

In the instructions to the jury the trial court said that the sole issue for the jury to determine was whether at the time the land in question was purchased by the defendant, Frederick H. Sprenger, there was an implied trust which arose by operation of law for the benefit of the plaintiff, Ludwig Sprenger. The court said that an implied trust is one which is created by operation of law and arises in the following cases:

(1) One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

(2) One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

(3) When a transfer of real property is made to one person and the purchase price or a portion thereof, is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made.

He further said in the instructions:

An "implied trust" arises by implication of law and is based on the implied intention of the parties to create a trust, the intention to create the trust may be found in the nature of the transaction even though not expressed in the contract or deed in question and is created by the law to prevent any unjust enrichment of the party that acquired title to the property.

An implied trust arises by operation of law if a person obtains legal title to property by virtue of a confidential relation between the parties and under such circumstances that the party acquiring legal title to the property is found as a fact to hold such title for the benefit of another party.

Where confidential relations prevail between parties and the confidence is violated, the law presumes undue influence upon the mind of the person who relied upon the confidential relationship and if such facts are found to exist, then an implied trust arises by operation of law.

■ In explaining the proof necessary to establish an implied trust, the court said:

The evidence necessary to establish an implied trust must be clear and convincing; that is, the evidence must be such as to lead to but one conclusion; that is, that there is an implied trust. If the evidence is of a doubtful nature or if from the evidence the jury finds a reasonable explanation for the transaction in question other than the existence of an

implied trust, then the evidence is not sufficient to establish an implied trust.

The defendant did not object to these instructions at the time they were given, nor has he specified the instructions as error on appeal. He merely emphasizes the rule which was quoted with approval by this court in Johnson v. Larson, 79 N.D. 409, 56 N.W.2d 750, 756, as follows:

> The rule is well settled that in order to establish an implied or constructive trust the evidence must be clear and convincing. In the case of Bodding v. Herman, 76 N.D. 324, 35 N.W.2d 561, 563, this court said:
>
> "The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 A.L.R. 286, 307; 45 A.L.R. 852; 80 A.L.R. 198 and cases cited. See also Bogert on Trusts and Trustees § 464."

He contends that the evidence in this case does not meet that standard.

Before discussing that issue at length, however, he argues that the proof required to establish an implied trust changes the general rule that appellate courts will not interfere with the verdict of a jury when there is credible or substantial evidence to support it. He would have us adopt the rule that would require this court to find that there is at least a preponderance of the evidence in favor of the verdict before we could sustain a verdict which im-

poses an implied trust. In support of his contention he refers us to a court case, not a jury case, decided in the State of South Dakota, the pertinent part of which reads as follows:

> Whether the evidence in a given case is clear and convincing is a question in the first instance to be determined by the trial court. Because of his participation in the proceedings he is in a better position than are we to evaluate its persuasiveness. It is not our function to substitute our judgment for his but rather to determine whether his findings are based on evidence which we can say meets the minimum standards of being clear and convincing, bearing in mind that it is for him to determine the credibility of the witnesses and the weight and value to be given their testimony. When he determines that the evidence is sufficient to warrant the imposition of a trust we may not disturb his conclusion unless we can say after an examination of the entire record and all the circumstances surrounding the transaction that the clear preponderance of the evidence is against his determination. * * *

Brown v. Warner, 78 S.D. 647, 107 N.W. 2d 1, at 5.

He also directs our attention to the earlier South Dakota case of Bruns v. Light, in which, incidentally, the Supreme Court of South Dakota refused to upset trial court findings which were consistent with the findings of an advisory jury. In that case the court quoted Medin v. Brookfield, 66 S.D. 209, 281 N.W. 97, (which was also quoted in *Brown*) as follows:

> Whether the evidence in a given case is clear and convincing is a question in the first instance to be determined by the trial court, and its conclusion is not to be disturbed by this court unless it can be said after an examination of the entire record and all circumstances surrounding the transaction as therein disclosed that the clear preponderance of

the evidence is against the findings of the trial court * * *.

Bruns v. Light, 74 S.D. 418, 54 N.W.2d 99, at 103, quoting Medin v. Brookfield, supra.

His analysis of the South Dakota rule is that the appellate court must reverse the lower court (whether its decision is based upon its own findings or upon findings made in conjunction with an advisory jury) unless the appellate court finds as a matter of law that a preponderance of the evidence supports the verdict.

The jury in the instant case is not an advisory jury but is a jury with the consent of the parties, and thus its verdict, under Rule 39(c), N.D.R.Civ.P., has the same effect as if trial by jury had been a matter of right.

■ We have previously stated the rule which applies in such a case. In In re Hendricks' Estate, a decision rendered by this court in 1961, the trial court submitted to a jury the issue of whether a confidential relationship existed between a testator and a beneficiary. The jury found that a confidential relationship did exist. Judgment was entered pursuant to this verdict, and upon appeal this court said:

* * * Upon an appeal from a case tried to a jury, our review of the facts is limited to a consideration of whether there is substantial evidence to sustain the verdict. If there is such evidence, we are bound by the verdict.

In re Hendricks' Estate, 110 N.W.2d 417 (N.D.1961), at 421.

■ This is the rule which we shall apply in the instant case in considering the next contention made by the appellant, that the evidence is not sufficient to support the verdict.

No useful purpose would be served in the instant case by setting forth in detail the evidence submitted by the parties and by indicating in what respects it is in conflict.

It is sufficient to say that a review of the evidence discloses that there is substantial evidence to support the plaintiff's claim.

Reviewing the evidence in the light most favorable to the verdict, we believe that the jury could reasonably have found: that the plaintiff, Ludwig Sprenger, lived at home with his father, the defendant, Frederick H. Sprenger, his stepmother, and their children, until he was 26 years of age; that while he lived with his father he helped with the farm and ranch work while the father farmed 560 acres of land which he owned, another 160 acres of land which he rented from a private party, and another 5½ quarter-sections of land which he rented from the State of North Dakota; that the father had about 80 head of cattle at that time; that Ludwig received little or no salary for these services; that in 1941 when he was 26 years of age he married and moved from the father's home; that in 1942 he quit a job paying $65 per month to return to his father's home to help him build a new house; that while he was living in Minot shortly prior to July 20, 1946, his father and stepmother came to visit him and his wife on two or three occasions, during which occasions the father suggested that the State land which they had been leasing could now be purchased and that he would buy two quarter-sections of the land for Ludwig and let Ludwig use his machinery to farm it if Ludwig so desired; that Ludwig discussed this with his wife and that they together decided that this should be done if the land could be purchased reasonably and that they so informed the father; that Ludwig offered to go to the auction sale with his father but his father said that would not be necessary; that subsequently, on July 20, 1946, the father bought at the State auction sale 5¾ quarter-sections of land on a contract which required a down payment of 20% of the purchase price; that the purchase price of the West Half of Section 5, Township 149, Range 88, McLean County, came to $8,500; that the father had previously told Ludwig that it would be necessary to make

a down payment of 20% of the purchase price; that five days following the bidding in of the property Ludwig gave to his father a check for $2,000 to cover the down payment on the West Half of Section 5; that the father accepted this check and deposited it to his checking account; that in the spring of 1947 Ludwig helped to break the sod on 100 acres in the Southwest Quarter of Section 5 and 100 acres in the Southeast Quarter of Section 5; that he gave a check to his father in the sum of $600 for flax seed in the year 1947; that an excellent flax crop was produced on the land in 1947; that at the request of his father he reported an income from the flax crop of $6,000, although he did not receive the income but assumed his father would apply the income toward the payment of the contract; that his father gave him a check for $500 to help pay the income tax required as the result of reporting the $6,000 income from the flax crop; that Ludwig also paid a state income tax on the flax crop; that Ludwig assisted his father at different times during the years 1948 and 1949, although he resided in Minot and was otherwise regularly employed; that Ludwig received none of the income from the crops raised in 1947, 1948, and 1949; that Ludwig started farming the land alone in 1950 and that he farmed 65 of the 100 tillable acres of the Southwest Quarter of Section 5 until 1964 (the pasture land being retained by the father for his cattle); that during the years 1950 through 1961 the crop was shared roughly on a ¾–¼ basis, with ¾ to Ludwig and ¼ to the father, Ludwig assuming that the father's share was being applied to pay the taxes and to make payments on the contract; that in 1962 and 1963 Ludwig retained all of the income from the 100 tillable acres; that in 1964 the father acted to prevent the son from further farming the land; that over the years Ludwig asked his father for an accounting but that his father did not give him one; that Ludwig did check on two occasions to see whether the payments were being made on the contract by his father and that he discovered that the payments

were being made; that the contract covering the West Half of Section 5 has now been paid in full and patents have been issued thereto to the father.

We believe that the jury could have concluded from these findings that a confidential relationship did exist between the father and the son at the time the arrangements for the purchase of the land were made, and that under this relationship the son provided the down payment for the purchase of the two quarter-sections of land and assumed thereafter that the father was paying the balance of the contract from the income from the land on behalf of the son. We are further convinced that there is no other reasonable explanation for the transaction and that therefore the jury could reasonably have found that an implied trust was imposed upon the land for the benefit of the son.

The last issue briefed by the appellant is that the trial court erred in sustaining objections to the admission of Exhibit M into evidence. Exhibit M is the official farm record card used in the operation of the Agricultural Stabilization and Conservation Service office. The card was based on information received through the Register of Deeds. In offering the exhibit the attorney for the appellant stated that it tended to show that the land was owned by the father and that nothing was done by the son to dispute that ownership. Counsel for the son objected to the admission of the exhibit on the ground that it was not the best evidence of ownership, and the court sustained this objection. The appellant points out that prior to this point in the trial the son had introduced marketing cards issued to him by the same office, and that, having opened the door, he should not have been allowed to shut it in the face of the defendant father, who wished merely to show the full record of the office which had issued the exhibits put into evidence by the son.

We agree that under the circumstances the trial court should have received this ex-

hibit into evidence but do not believe that the failure to do so constitutes prejudicial error, as the jury was fully cognizant of the fact that the father had purchased the land in his own name, and as the information upon which Exhibit M was made was derived from records in the office of the Register of Deeds based upon the legal contract entered into by the father and the State of North Dakota.

For reasons stated herein the judgment and order of the trial court are affirmed.

TEIGEN, C. J., and STRUTZ and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.