O. N. BODDING, Respondent, v. CHARLES O. HERMAN, Appellant.

(35 NW2d 561)

Opinion filed September 29, 1948. Rehearing denied January 29, 1949

*A. Leslie* and *H. P. Remington,* for appellant.

*Francis Murphy,* for respondent.

GRIMSON, District J.  The plaintiff brings this action to quiet title to twelve tracts of land against any claim of the defendant to an interest therein.  Plaintiff claims to be the sole owner but alleges that the defendant has looked after the farming of these lands, as his agent for the several past years under an oral agreement between them and he asks for an accounting in connection therewith.  The defendant admits that the record title to ten of said tracts is in the plaintiff and alleges that the title to the other two is in the defendant but he claims that the titles to all said lands are held in trust for the plaintiff and defendant under an oral agreement.  He asks for an accounting of said trust and the appointment of a receiver for the partition and final disposition of said land in accordance with said alleged implied trust.  The real issue in this controversy is raised on defendant's answer and counterclaim.

Chapter 59–03 NDRC 1943, provides for trusts relating to realty.  Such trusts may be created by a written instrument or by operation of law.  Sec. 59–0303 NDRC 1943.  A trust created by operation of law is an implied trust.  Sec. 59–0105 NDRC 1943.  An implied trust arises (1) When one wrongfully detains a thing; (2) When one gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act.  Sec. 59–0106 NDRC 1943.  In such cases the one who holds the property is an implied trustee.  There is no written instrument in this case.  Defendant's claims are made under the provision of the Code regarding implied trusts.

Trusts of that kind may be established in equity by oral testimony.  See Cardiff v. Marquis et al., 17 ND 110, 114 NW 1091; Hanson v. Svarverud, 18 ND 550, 120 NW 550; Hughes v. Fargo Loan Agency, 46 ND 26, 178 NW 993; Arntson v. First National Bank of Sheldon, 39 ND 408, 167 NW 760, LRA1918F 1038.  In Cardiff v. Marquis, et al., supra, this court said:

"In Perry on Trusts, Sec. 166, it is stated: 'If a person ob-

tains the legal title to property by such arts or acts or circumstances of circumvention, imposition or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience, as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it or to execute the trust in such a manner as to protect the rights of the defrauded party and promote the safety and interests of society.' See 3 Pomeroy, Eq. Juris. (3d Ed) note 'a' to section 1056, where the cases are collected. The doctrine there announced is that relief is granted in such cases not in violation of the terms of the statute of frauds, but that a constructive trust is raised, based on the fraud growing out of the confidential relation, and that it is immaterial that no fraudulent intent actually existed when the conveyance was delivered. In Wood v. Rabe, 96 NY 414, 48 Am Rep 640, the court granted relief under facts somewhat parallel. The court said: 'The court, in granting relief in case of an oral agreement, proceeds upon the ground of fraud, actual or constructive, and enforces the agreement, notwithstanding the statute, by reason of the special circumstances. . . . There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which, taken together, in our opinion, entitle the plaintiff to maintain this action. One is that it will not permit the statute of frauds to be used as an instrument of fraud, and the other, that, when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court to prevent the abuse of confidence will grant relief.' " 17 ND at pp 118–119, 114 NW at pp 1090–1091.

A resulting trust has been defined "to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found

in the nature of their transaction, but not expressed in the deed or instrument of conveyance." 65 C J 222–223.

"A resulting trust arises where a transfer of property is made under circumstances which raise an inference that the person making the transfer or causing it to be made did not intend transferee to have the beneficial interest in the property transferred. . . . A constructive trust is imposed upon a person in order to prevent his unjust enrichment. To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him. . . ." A.L.I. Restatement of Restitution, Quasi Contracts and Constructive Trusts 642. According to the comment following the above quotation in most cases where a constructive trust is imposed, the result is to restore to a party property of which he has been unjustly deprived and to take from the holder thereof property, the retention of which by him would result in his corresponding unjust enrichment.

In Knox v. Knox, 222 Minn 477, 25 NW2d 225, it is held that: "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." See also Butler v. Watrous, 185 Ala 130, 64 So 346; Kennedy v. McCloskey, 170 Pa 354, 33 A 117; Despard v. Despard, 53 W Va 443, 44 SE 448; Bond v. Taylor, 68 W Va 317, 69 SE 1000. Judge Cardozo in Beatty v. Guggenheim Exploration Co. 225 NY 380, 122 NE 378, says: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." See also Bogert on Trusts and Trustees, Vol. 3, Part 1, p. 3.

Where one party furnishes the capital and the other a special knowledge necessary for a speculative real estate transaction and the agreement is that the party furnishing the money shall take title, that the other will do the work and that on resale

they will divide the profits the enforcement of such agreements though not in writing has invariably been held not to be precluded by the Statute of Frauds. Anno. 42 ALR 76.

It has been held that such an agreement creates a resulting trust in the land itself, and not merely in its proceeds after sale. Hannah v. Canty, 175 Cal 763, 167 P 373, and that a constructive trust arises in favor of the party contributing the services. Brogden v. Gibson, 165 NC 16, 80 SE 966; Mankin v. Jones, 68 W Va 422, 69 SE 981.

The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 ALR 286, 307; 45 ALR 852; 80 ALR 198 and cases cited. See also 2 Bogert on Trusts and Trustees 1422.

In accordance with the principles thus cited which are supported by the majority holdings of the courts as well as by good reason and common sense the defendant if he established his contentions by a convincing preponderance of the evidence, is entitled to have an implied trust imposed upon the property described in the complaint for the benefit of both plaintiff and defendant.

The plaintiff and defendant were acquaintances of long standing, living in the same neighborhood in the city of Ada, Minnesota. They had transacted business together and met almost daily. The plaintiff owned and operated some grain elevators, a feed mill and a lumber yard. The defendant had been in the automobile, garage and oil business. Both owned some land. For a year prior to the beginning of their land transactions herein involved they had been in the used-car business, the plaintiff furnishing the capital, the defendant doing the work, but just under what arrangement that business was con-

ducted does not appear in the evidence. The inference, however, must be that the relationships and the closing of that business were satisfactory as immediately following that these land transactions began.

The defendant while visiting relatives in Sargent County, North Dakota in 1934 learned of a tract of land that could be bought at a low price on reasonable terms. Defendant himself, however, does not seem to have had much money. On his return to Ada he went to a man by the name of A. J. Johnson and suggested to him they together buy this land. Johnson suggested taking in Bodding, the plaintiff, and the three of them together agreed to buy this tract, furnish one-third of the price each and to share one-third in any profits. Of the $500.00 down payment each paid one-third. Somewhat later the balance of the contract was paid up, one-half each by Johnson and the plaintiff. Title was taken in defendant's name. He had the making of the arrangements and the management of the farm thus bought. He collected the landlord's share of the crops and turned it over to Johnson. Later two other tracts of land were bought in the same way by the three men and left to defendant's management.

In 1938 there was talk between plaintiff and defendant about buying some more cheap land. Defendant claims plaintiff did not want Johnson in the deal so the two decided to go ahead and the last nine parcels of land involved in this lawsuit were lands found by the defendant and purchased through his negotiations with money furnished by plaintiff. Sometimes the lands were viewed by plaintiff but otherwise he had no connection with the making of the deals nor with the management of the farms afterwards.

In making these deals the defendant made trips twice to the east coast and once to the west coast, at least one to St. Paul, besides many trips between Ada and the lands and towns in the southeastern part of North Dakota and the northeastern part of South Dakota. He negotiated with the Federal Land Bank, insurance companies, mortgage companies, receivers of closed banks, county officers and non-resident owners. In one case he had to engage an attorney and go to court to complete

his deal. He had some of the lands reconditioned at his own expense and some buildings were repaired. None of his expenses were refunded to him and no claim was rendered by him for services.

· Several of these tracts were bought on contract with small down payments. These contracts were invariably in defendant's name and some were held that way for more than a year. Plaintiff incurred no liability in connection therewith. When the contracts were paid up some of the titles were taken in plaintiff's name, others in defendant's name.

· In 1942, or about that time, the contracts were all paid up and all titles transferred to plaintiff Bodding excepting two tracts called the Hoas and Bennett tracts. As to those, accounts were in 1944 squared so defendant had all the ·cash investment in the Bennett tract, plaintiff in the Hoas as well as all the other tracts.

About 1940 Johnson died and thereafter Bodding made a deal with the Johnson heirs for the Johnson interest in the three tracts bought jointly by the three. Thereafter, they were handled by the defendant in exactly the same manner as the nine tracts involved in the Bodding transactions. In a settlement of his personal account with plaintiff in 1942 defendant was given credit for the $166 he had originally paid on the first tract.

· When the first lands were bought they were rented out on a one-third basis net to the landlord. Later no tenants would rent upon those terms. Plaintiff would not furnish seed. Arrangements were then made between plaintiff and defendant that the land should be leased on a half basis to the tenant, one-fourth to the defendant for seed, landlord's share of the thresh bill, twine and the hauling and any other landlord expenses and one-fourth to be turned in to plaintiff, clear of expenses, together with all cash rent and soil conservation payments. The leases were made out between plaintiff as landlord and the tenants, but negotiated by defendant.

The defendant did all the supervision of the farming, sold the crops, reported to plaintiff and turned over to him the landlord's share of the proceeds. He did this for all the lands,

whether the title was in his name or the plaintiff's. Defendant turned in these reports orally and on slips, elevator checks and personal checks but kept no account thereafter. Misunderstanding began in 1944. Defendant then retained the Bennett and some other crops to the knowledge and with the consent of the plaintiff.

In 1945 the defendant seems to have lost confidence in plaintiff's intentions regarding these transactions and retained all the crops pending full accounting and settlement, making reports however to the plaintiff. Thereupon this action was started.

The plaintiff claims and testified that he was the absolute owner of all these lands, except perhaps the Bennett tract although that, too, is included in the complaint; that there was no agreement that the defendant should have an interest in the lands or profits and no agreement that he should in anyway be remunerated for his expenses and services in the whole matter, although said expenses and services are admitted.

The defendant claims and testifies that the arrangements with plaintiff as to the nine tracts of land was that defendant should report to plaintiff on cheap land deals, that on plaintiff's approval defendant should negotiate the contracts in his own name; that plaintiff should furnish the money but not become liable on any of the contracts; that the defendant should look after the farming of the land bought; that the landlord's share should go into a fund out of which should be paid the taxes and upkeep of the property and the balance used to retire plaintiff's cash investment in each tract of land; that books were to be kept by plaintiff separately for each tract; that later the three Johnson-Bodding-Herman tracts were included in the same arrangement. He claims and testifies further that, when in 1942 plaintiff wanted to pay up the contracts and take title, it was agreed that plaintiff should have five per cent. interest on the money used for that purpose; that on sale of each tract or where the income of the lands became sufficient to pay the purchase price thereof then, when plaintiff was fully reimbursed his cash investment with interest, each should share equally in the balance which would be the net profits on said

deals and that the same agreement applied to the tracts held in his name.

All that the plaintiff did was to furnish the money. According to the defendant's claim, that money was to be repaid to the plaintiff out of the net proceeds of the crops or on sale of the lands and on at least that portion furnished to pay up the contracts plaintiff was to receive five per cent. interest. He was to keep the books. He incurred no liability on the contracts and had no worry of management.

On the other hand, the defendant had all the trouble of looking up these bargains, of trips in connection therewith, of checking the records, of making the deals. He paid all expenses, including those of the trips. He signed the contracts and incurred the liability if not paid. He managed the farms. He furnished the seed, paid landlord's expenses such as threshing, twine and hauling, for the speculative one-fourth of the crop during the period of drouth and depression, when neither plaintiff nor the tenants were willing to do that. He made no charge for his services and claims no agreement for payment for services. He reported all crops and made return of the landlord's share until 1944, even from the lands that were in his name under contract or by deed.

Plaintiff had the security of the unincumbered lands when they were put in his name not only for his investment but for five per. cent. on at least some of it. Defendant had no security and stood to lose all his work and expenses if the lands did not yield more than the plaintiff's cash investment. His risk was much the greater. Plaintiff was to be fully reimbursed before defendant got anything for his trouble and expense, and then he was only to share equally with the plaintiff.

The defendant claims that as he reported on each tract each year the accounts were kept by the plaintiff in books separately for each tract. He claims he saw these books as late as 1942. He kept no books himself. Before the trial notice was served on plaintiff to produce these books. He failed to do so. On the first day of the trial they were called for and plaintiff was again asked to produce these books. An adjournment of three weeks was taken. When the case was next taken up demand

was again made for the books. Plaintiff claims none had been kept, but on continued insistence he did produce statements showing the investment and the income from each particular tract. Somewhere that information had been kept but the original records, whatever they were, were not produced. "If after due notice to produce books and papers at the trial, a party refuses or fails to do so, it may be presumed that such failure or refusal is because such books, or papers, if produced, would operate against his claim and in favor of the claim of the opposite party." 20 Am Jur 190.

The tracts of land involved contain some two thousand acres of land and cost some $29,000. In addition defendant found and offered plaintiff at least twenty-five more tracts, some of which, on plaintiff's refusal, he bought himself. Apparently plaintiff had first chance. One of the twelve tracts here involved had been sold through defendant's negotiations at a profit of $1600.00 retained by plaintiff. Defendant secured purchasers whose offers to buy other lands were rejected by the plaintiff.

The looseness of the whole arrangement is evident. The defendant claims to have insisted on a written agreement but was put off from time to time. Yet he reported the crops and turned over the landlord's share without retaining an accurate accounting of what he had done. Such transactions, however, amongst men of close friendship with confidence in each other are not uncommon. That such relationship existed here on both sides is shown by the undisputed fact that some of these lands were taken in defendant's name though bought with plaintiff's money and the defendant accounted for the crops of those lands in his own name as well as of the lands in plaintiff's name. Clearly both parties had confidence in each other, which may account for the looseness of the manner in which the transactions were carried on.

Plaintiff concedes that defendant is entitled to some recompense for his services. An interest in the lands and the ultimate profits as claimed by the defendant would supply that recompense. The plaintiff shows no other agreement therefor nor any reasonable explanation of defendant's contentions. All the circumstances support the defendant's claims in that re-

spect. No one of the experience and ability shown by the defendant would perform the services he did without some understanding of remuneration.

The plaintiff attempted to corroborate his claims by the testimony of his son. That, however, only goes to the extent that the son testified defendant had never made these claims in conversations with him. On the other hand, all the actions of the defendant bear him out. He took the greater risk in connection with the transactions. The confidence shown by each party in the other explains the looseness of the transactions between them. The failure of the plaintiff to produce the original records raises an inference against him. Finally, it would be an unjust enrichment of the plaintiff if he, after recovering his cash investment with interest, were allowed to take all the profits of the transactions and leave the defendant without any recompense for the expenses and work he contributed to what amounts to a joint venture of the parties.

The court has come to the conclusion that the defendant has supported his claims by sufficiently clear, satisfactory and convincing evidence; that the acts of the parties and the circumstances shown in the evidence establish the defendant's claims; that the plaintiff wrongfully withheld from the defendant an interest in the property described in the complaint; that to allow plaintiff to retain the whole interest in said lands would result in his unjust enrichment at the expense of the defendant. It follows that a trust by operation of law must be impressed on the lands described in the complaint for the benefit of both plaintiff and defendant; that both parties should make a full and complete accounting; and that such further proceedings be had as may be necessary to wind up said trust.

The decision of the district court is reversed and the case remanded for further proceedings in the district court in accordance herewith.

CHRISTIANSON, Ch. J., NUESSLE and BURKE, JJ., and THOM, District J., concur.