Nellie **CARLSON**, Plaintiff and Appellant,

v.

**M. B. ROSENCRANS**; Alvina Murphy; Doris Buckley; Charlotte Prentiss; Esther Manley; Ralph Rosencrans and Steve Drake, Defendants and Respondents.

No. 7715.

Supreme Court of North Dakota.

Feb. 3, 1958.

Rehearing Denied March 10, 1958.

Swenseid & Bekken, Stanley, for plaintiff and appellant.

Q. R. Schulte, Stanley, for defendants and respondents.

SATHRE, Judge.

The plaintiff herein Nellie Carlson is the daughter and only child of James Philamalee and his wife Lizzy. They were married in 1890. Lizzy died in 1911, and in 1912 James Philamalee married a widow, Ida Rosencrans, who had three children by

a former marriage, Morris B., Ralph, and Esther Rosencrans. James Philamalee and his second wife continued to live upon the farm that had been occupied by him and his first wife, Lizzy.

In 1944 James Philamalee, then 76 years of age, executed his will leaving all of his property to his wife Ida, and three children born to him and Ida, his second wife; Charlotte, Alvina, and Doris, and to one Steve Drake, who had lived with the Philamalees from his childhood. The will provided that one third of his estate should go to his wife Ida, and that the remaining two thirds should be divided equally among Charlotte, Alvina, Doris and said Steve Drake. The will made no provisions for the plaintiff, Nellie Carlson, his child by his first marriage.

James Philamalee died in July 1947 at the age of 78 years. His will was filed for probate in Mountrail County, and Citation was duly issued and served on the interested parties including the plaintiff. James Philamalee nominated his wife Ida to be executrix of his will, but upon the hearing for proof of the will, her son by her first marriage, M. B. Rosencrans, was appointed administrator with the will annexed.

In September 1947, after the appointment of M. B. Rosencrans, as Administrator with the will annexed of the Estate of James Philamalee, deceased, the plaintiff, Nellie Carlson, called on her stepmother Ida Philamalee at the Philamalee farm, and inquired about the provisions in her father's will. She was informed by her stepmother that plaintiff's father made no provision for her in his will and that he had given all his property to his wife Ida, and to his children by Ida and to one Steve Drake. That plaintiff then stated that she could contest the will. She asserts that her stepmother then stated that if plaintiff would not make any trouble she would get an equal share with the rest of the children.

Her stepmother continued to live on the farm home which was being operated by Steve Drake as a tenant. Ida Philamalee died in 1956 intestate at the age of 84 years, leaving an estate consisting of the one third of her husband's estate which she received under the terms of his will. The estate included real estate, cash and securities. Her son by her first marriage, Mr. M. B. Rosencrans, one of the defendants in this action was appointed administrator of her estate.

The estate of James Philamalee was closed and final decree of distribution issued and entered therein on October 8, 1948, and the residue of the estate distributed to the persons named in the Will. The plaintiff Nellie Carlson was named as a respondent in the probate proceedings of her father's will and she was served with notice and citation of the hearing for proof of will and appointment of executor July 22, 1947. However she made no appearance therein, and received no part of the estate.

Final discharge of M. B. Rosencrans, as administrator with the will annexed of the estate of James Philamalee was filed and entered on the 21st day of December 1948.

The plaintiff was not made a party to the probate proceedings in the estate of her stepmother Ida Philamalee. The final report and account of the administrator of that estate was filed in the county court of Mountrail County on the 12th day of December 1956. The plaintiff contends that the conversation that she had with Ida Philamalee in the fall of 1947, and referred to herein, resulted in a contract whereby Ida Philamalee agreed to give the plaintiff a share in her estate on condition that she, the plaintiff, would not contest her father's will. The plaintiff did not contest her father's will, and after her stepmother's death she brought this action against M. B. Rosencrans, Ralph Rosencrans and Esther Manley, children of Ida Philamalee by her first marriage, and against Charlotte Prentiss, Alvina Murphy, and Doris Buckley, children by her second husband James Philamalee, and also against Steve Drake.

Plaintiff's complaint alleges that Ida Philamalee entered into an agreement with the

plaintiff to the effect that if plaintiff would make no demand on her father's estate, and would cause no trouble under his will, that Ida Philamalee, on her death, would make plaintiff share equally in her estate with the other children of James Philamalee and Ida Philamalee; that therefore plaintiff is entitled to a one seventh share of the estate of Ida Philamalee deceased. Judgment is then demanded to the effect that the defendants are holding in trust for plaintiff an undivided one seventh interest in the estate of Ida Philamalee, deceased; that defendants be required to pay plaintiff one seventh of the money in said estate; that they be required to convey to plaintiff an undivided one seventh interest in the real estate belonging to estate of Ida Philamalee deceased.

The defendants' answer admits that James Philamalee executed his will as alleged by plaintiff and that he made no provision therein for the plaintiff; that Ida Philamalee died intestate and that her estate is in course of administration in the county court of Mountrail County. They deny that Ida Philamalee made any valid agreement with plaintiff to give her a share in her estate.

The case was tried in the district court of Mountrail County to the court without a jury. The trial court found for the defendants and dismissed the action and plaintiff appealed and demanded a trial de novo.

The plaintiff contends that when she met with her stepmother in September 1947, a valid contract was entered into whereby her stepmother agreed that upon her death the plaintiff would receive a share in her estate equal with her other children if she, the plaintiff, would not contest her father's will and is therefore entitled to participate in her estate equally with the other heirs of her stepmother. The plaintiff testified as follows with reference to the conversation with her stepmother in September 1947:

"What actually did you tell Mrs. Ida Philamalee?"

In answer to the question Nellie replied.

"I asked her how it come up in Stanley and she said there wasn't much doing. She said Maurice had been appointed Administrator and so then I said, 'well, I didn't go up'. She said there was no court because she said all he had to do is get it straightened out. I said 'what did he leave in his Will?' She said 'I got one third and the three girls and Steve got the other two thirds.' So, I said 'he didn't leave anything to me?' She said, 'no, it in the will that you got your share.' Well, I says, 'as far as getting our share we haven't got nothing as he had got far more from us than we got from him'. I said 'it sure hurts'. She said 'I didn't figure having the Will administered right now,' but she said 'Alvena wants to put it through Court,' She said, 'the other two girls are in no hurry'. She went on to say Alvena had been trying to force her to do it as quick as she can. I said 'she better not get too smart or I can contest the Will'. When I said 'Contest the Will' she wasn't interested in me coming up to Stanley to sign the papers. All she wanted for me not to cause her any trouble and not contest the Will and I told her I wouldn't. She said, 'if you don't do that Nellie you will get your share and equal share with each and everyone of them.' "

The plaintiff Nellie Carlson testified that she never talked to her stepmother Ida about the matter any more because she trusted Ida and thought she would do as she told her she would.

Howard Carlson, a son of the plaintiff, testified that he was with his mother at the Philamalee farm in 1947, and that he was fifteen years old at that time and that he heard a part of the conversation between his mother, the plaintiff, and her stepmother. He testified as follows :

"Q. And what was that conversation that you heard as near as you

can remember? A. Well, she said if Mom didn't make trouble * * *.

"Q. (Interposed) Who is she? A. Aunt Ida. She told Mom if Mom didn't make any trouble she would get her equal share.

"Q. Equal share of what? A. What was left.

"Q. Equal share of her estate? A. Yes.

"Q. Ida Philamalee's estate? A. Yes.

"Q. That's what you heard was it? A. Yes.

"Q. What did your mother say, if anything? A. Well she said she wouldn't make any trouble."

Plaintiff argues in her brief that this conversation between her and her stepmother constitutes a valid agreement entitling her to a share of her stepmother's estate; that the residue of the estate held by the defendants is impressed with a resulting trust in her favor to the extent of an equal share with the heirs of her stepmother.

The defendants objected to this testimony as incompetent and in violation of Section 31–0103, NDRC 1943, known as the dead man's statute, and on the further ground that in any event if there were an agreement as alleged it involved the transfer of real property, and not being in writing, was contrary to the provisions of Section 47–1001, NDRC 1943. The trial court overruled the objection but permitted the defendants to have a standing objection to all such testimony. Section 31–0103 is as follows:

"In any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party, except as provided in section 31–0104 and section 31–0105, shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. Where a corporation is a party to any proceeding mentioned in this section, no agent, stockholder, officer, or manager of such corporation, shall be permitted to testify to any transaction or conversation had with the testator or intestate."

Plaintiff contends, however, that this action is brought against the defendants individually and not as heirs at law, nor against them as administrators, and that therefore the statute is inapplicable to the facts in this case. In support of this contention she cites Shong v. Farmers & Merchants' State Bank, N.D., 70 N.W.2d 907, 915. The facts in that case differ materially from the facts in the instant case. In that case no interest of the contending parties in property as heirs of a deceased person was involved. We quote from the opinion:

"In the case at bar it is true that the title thereto designates the contending parties as heirs of Alfreda Shong, deceased. But they are not claiming any interest in the property as her heirs. This action involves no property of the estate of Alfreda Shong. * * * The facts show that the parties do not come within the terms of Section 31–0103, NDRC 1943."

In the instant case the conversation between the plaintiff and her stepmother involved distribution of the property of the estate of plaintiff's stepmother. Six of the defendants were her children and heirs at law and entitled to a share in her estate. The fact that they were not designated in the pleadings as heirs at law of Ida Philamalee deceased, did not change the fact of their relationship to their mother and their rights as her heirs. The estate of Ida Philamalee was in course of administration, and the defendant, M. B. Rosencrans, a son of Ida, was administra-

tor of her estate. The fact that he was not designated as administrator in the pleadings did not affect his duties and responsibilities as such. The issues in this action involve the distribution of the residue of the estate of Ida Philamalee, deceased, and the interests of her heirs at law therein. The judgment in this case must necessarily be rendered either in their favor or against them as heirs of their mother Ida Philamalee.

At one point in her testimony the plaintiff testified as follows:

"Q. Then what further conversation did you have at that time? A. Well, I told her as far as getting anything we hadn't got nothing and I would contest the Will. Then she said if I wouldn't contest the Will or make her more trouble up there that she would see that I got my just and equal share with the rest of them.

"Q. Share of what? A. Share of the estate.

"Q. Was that her estate? A. Well, I suppose it meant both of them because his wasn't probated at that time.

"Q. It was in probate at that time? A. It was in probate at that time.

"Q. When she died you would get your share of the estate? A. Yes."

█ The testimony of Nellie Carlson relates to the statements made by Ida Philamalee relative to the disposition of her estate, and clearly is within the inhibition of Section 31–0103, NDRC 1943.

The alleged conversation is vague and too indefinite to impress an implied or resulting trust upon the estate of Ida Philamalee in favor of the plaintiff. There is no direction, information or formula expressed in the conversation by which the share claimed by plaintiff may be ascertained or determined.

█ The testimony of plantiff's son, Howard, was admissible under the dead man's statute since he was not a party to the action; but his testimony was too indefinite and wholly insufficient to establish a trust agreement between plaintiff and her stepmother Ida Philamalee. The rule is well settled that in order to establish an implied or resultant trust the evidence must be clear and convincing and lead to but one reasonable conclusion.

In the case of Bodding v. Herman, 76 N.D. 324, 35 N.W.2d 561, 563, this court said:

"The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 A.L.R. 286, 307; 45 A.L.R. 852; 80 A.L.R. 198 and cases cited. See also 2 Bogert on Trusts and Trustees, § 464."

See also Carter v. Carter, 14 N.D. 66, 103 N.W. 425; Lander v. Hartson, 77 N.D. 923, 47 N.W.2d 211.

█ We have arrived at the conclusion that the alleged conversation between the plaintiff and Ida Philamalee was incompetent and inadmissible under Section 31–0103, NDRC 1943. We are also of the opinion that such conversation, if it actually took place, is too indefinite and wholly fails to establish an implied or resulting trust in favor of the plaintiff. As this court said in the case of Carter v. Carter, supra [14 N.D. 66, 103 N.W. 426]:

"In a case such as this, the plaintiff must have more than a preponderance of evidence. The proof must be 'clear, specific, satisfactory, and of such character as to leave in the minds of the chancellor no hesitation or substantial doubt.' "

Under our decision as set forth herein it will not be necessary to consider defendants' contention as to the application of the statute of frauds, Section 47–1001, NDRC 1943, to the alleged agreement herein.

The judgment of the trial court dismissing the action is affirmed.

GRIMSON, C. J., and JOHNSON, BURKE, and MORRIS, JJ., concur.