239 N.W.2d 833 (1976)
Rose Mary SCHEID, Plaintiff-Appellee,
v.
Roland A. SCHEID, and all other persons unknown claiming any Estate or interest in or lien or encumbrance upon the property described in the complaint, Defendants-Appellants.
Civ. No. 9179.
Supreme Court of North Dakota.
March 12, 1976.
Rehearing Denied April 5, 1976.
*835 Wheeler, Wolf, Wefald & Durick, Bismarck, for defendants and appellants; argued by B. Timothy Durick, Bismarck.
Richardson & Blaisdell, Hazen, for plaintiff and appellee; argued by J. C. Blaisdell, Hazen.
PAULSON, Judge.
This is an appeal by the defendant, Roland A. Scheid [hereinafter Roland], from a judgment of the Mercer County District Court quieting title in the plaintiff, Rose Mary Scheid [hereinafter Rose Mary], to certain real property located in Mercer County, North Dakota.
The parties to this action were married on December 26, 1956. About six months after their marriage, they moved to Phoenix, Arizona, where both parties still reside. The marriage was dissolved by a decree of dissolution of the Superior Court, Maricopa County, State of Arizona, on July 17, 1974.
The land involved in the instant case is pasture land located about three and one-half miles southwest of Hazen, in Mercer County, and is described as:
The Southwest Quarter (SW ¼) of Section Fifteen (15), Township One Hundred Forty-four (144), Range Eighty-seven (87), situated in Mercer County, North Dakota.
The land was owned by Rose Mary's father, William Christmann, who executed a quit *836 claim deed to Rose Mary on October, 27, 1953, which was about two months before Rose Mary's marriage to Roland, but which deed was not delivered to Rose Mary until 1956. The deed was recorded in the office of the Register of Deeds of the County of Mercer, State of North Dakota, on February 2, 1956.
On December 22, 1966, Rose Mary executed a quit claim deed to such property, transferring ownership to Roland and herself "as joint tenants with right of survivorship". Such deed was executed in Maricopa County, Arizona, and was recorded in the office of the Mercer County Register of Deeds on January 16, 1967. The deed recited that such transfer was being made "For the consideration of Ten Dollars, and other valuable considerations".
After the dissolution of the marriage between Rose Mary and Roland in July of 1974, Rose Mary commenced this action on August 19, 1974, in Mercer County District Court, seeking, in her original complaint, an order from the court declaring that any interest held by Roland in the property was held in trust for the benefit of Rose Mary.
Personal service of the summons and complaint in this action was thereafter effected on Roland in Arizona. Such service of process is equivalent to personal service within North Dakota. See Rules 4(b)(2) (E) and 4(d)(3), N.D.R.Civ.P.; Grenz v. O'Rourke, 235 N.W.2d 881, 884 (N.D.1975).
Roland, on September 17, 1974, answered Rose Mary's complaint, denying that her transfer of the property in 1966 was intended to be a trust, and also interposed a counterclaim, claiming for himself a joint tenancy interest in the property. Roland further asserted that his interest in such property was established by a judgment and decree entered in a quiet title action in the Mercer County District Court on April 2, 1970.
Rose Mary amended her original complaint, after securing the district court's order permitting her to do so, because the decree of dissolution entered by the Arizona court specifically excluded any disposition of such property.[1] By such amended complaint, dated January 13, 1975, Rose Mary set forth an additional cause of action and requested that the Mercer County District Court award the property to her as a just and equitable division of the parties' North Dakota property.
Roland interposed an amended answer, denying Rose Mary's claim to the property under either cause of action set forth in her amended complaint, and reasserted his counterclaim. Rose Mary, in her reply to such counterclaim, denied Roland's allegations and the suit was thereafter tried to the court.
The only witnesses called by Rose Mary at trial were her brother, Albert Christmann; Albert's wife, Mardella Christmann; and herself. Roland called no witnesses, relying solely upon his cross-examination of Rose Mary and her witnesses to substantiate his defense and counterclaim. After trial, the trial court held that the land in question was the sole and separate property of Rose Mary. The trial court based such a holding on its conclusion that, at the time of the 1966 transfer of the property into joint tenancy ownership with Roland, Rose Mary was under a mistaken belief as to the legal effect of the joint tenancy deed, which therefore led the court to impose an implied trust for her benefit. Furthermore, the trial court also concluded that Rose Mary was entitled to the property as a result of the marriage dissolution because the property had originally been a gift to her from her father and had been so treated during the course of her marriage to Roland. Roland *837 appeals from the trial court's judgment awarding the land to Rose Mary.
We are presented with two issues in this appeal:
1. Did the trial court err in imposing an implied trust for the benefit of Rose Mary on Roland's claimed interest in the property?
2. Did the trial court err in awarding the property to Rose Mary as a just and equitable distribution of the parties' North Dakota property after their marriage had been dissolved by a court of competent jurisdiction in the State of Arizona?
Roland's first contention in this appeal is that the trial court erred in imposing an implied trust by operation of law on any interest in the property Roland may have acquired by virtue of the 1966 joint tenancy deed executed by Rose Mary. Roland urges that even if the trial court was correct in concluding that Rose Mary was mistaken as to the legal effect of the joint tenancy deed, such mistake is not the type of mistake which comes within the purview of § 59-01-06, N.D.C.C.
The applicable statutes provide, in pertinent part:
59-01-05, N.D.C.C. "Implied trust-Definition.An implied trust is one which is created by operation of law."
59-01-06, N.D.C.C. "Implied trust How created.An implied trust arises in the following cases:
. . . . .
"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;" [Emphasis added.]
In the instant case, Rose Mary alleged in her complaint that Roland had acquired an interest in the land in question by procuring the 1966 quit claim deed from Rose Mary by accident, mistake, undue influence, or fraud. After trial, the district court, however, apparently found that Rose Mary had substantiated only her claim of mistake, because the court stated in its Finding of Fact No. 9:
"9.
"That plaintiff and defendant were both mistaken as to the legal effect of the Quit Claim Deed."
There was no finding by the trial court that Rose Mary had established any claim of accident, undue influence, or fraud on the part of Roland involving the 1966 quit claim deed executed by Rose Mary.
Based upon its findings of fact, the district court, in Conclusion of Law No. 1, held:
"1.
"That defendant took no interest in the property by the Quit Claim Deed nor the action to quiet title, and that an implied trust results by virtue of Section 59-01-06 of the North Dakota Century Code, any interest in the property having been gained by defendant by mistake."
Implied trusts are created by operation of law and consist of two types: resulting and constructive. Shong v. Farmers' & Merchants' State Bank, 70 N.W.2d 907, 911 (N.D.1955); Bodding v. Herman, 76 N.D. 324, 35 N.W.2d 561, 562 (N.D.1948); Bogert, Trusts & Trustees 2nd Ed. § 471 (1960); Note, Implied Trusts in North Dakota, 29 N.D.L.Rev. 58 (1953).
A "resulting trust" exists where the acts or expressions of the parties indicate an intent that a trust relation resulted from their transaction. Shong v. Farmers' & Merchants' State Bank, supra; Bodding v. Herman, supra. In the instant case, there is no credible evidence that the parties intended (at the time that Rose Mary conveyed the property in joint ownership) or contemplated a trust relationship. The trial court's findings of fact do not mention *838 such an intent, nor does the evidence before such court establish it. Therefore, there is no issue before this Court as to a "resulting trust". Consequently, if an implied trust were present in this case, it must, of necessity, be a "constructive trust".
A "constructive trust" is a trust imposed by a court in equity to compel a person who unfairly holds a property interest to convey such interest to the rightful owner. Bogert, Trusts & Trustees (2nd Ed.) § 471 (1960); Note, Implied Trusts in North Dakota, supra 29 N.D.L.Rev. at 59. The court imposes a constructive trust to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. Bodding v. Herman, supra at Syll. ¶ 2; McDonald v. Miller, Syll. ¶ 1, 73 N.D. 474, 16 N.W.2d 270 (1944).
It is a well settled rule that a party seeking to have the court impose a constructive trust (which, in legal effect, would set aside a deed absolute on its face) bears a heavy evidentiary burden. Such party must present clear and convincing evidence that the facts and circumstances involved in the particular case warrant imposition of a constructive trust, pursuant to the applicable statute. Wildfang-Miller Motors, Inc. v. Miller, Syll. ¶ 2, 186 N.W.2d 581 (N.D.1971); Shong v. Farmers' & Merchants' State Bank, supra at Syll. ¶ 7; Johnson v. Larson, 79 N.D. 409, 56 N.W.2d 750 (N.D.1953); Bodding v. Herman, supra 35 N.W.2d at 563; Carter v. Carter, Syll. ¶ 1, 14 N.D. 66, 103 N.W. 425 (1905); Bogert, Trusts & Trustees (2nd Ed.) § 472 (1960). In Bodding v. Herman, supra 35 N.W.2d at 563, this Court stated:
"The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust. See 35 A.L.R. 286, 307; 45 A.L.R. 852; 80 A.L.R. 198 and cases cited. See also 2 Bogert on Trusts and Trustees, § 464 [1935]." [Emphasis added.]
In Lander v. Hartson, 77 N.D. 923, 47 N.W.2d 211, 215 (1951), this Court quoted with approval from Bodding v. Herman, supra 35 N.W.2d at 563:
"`The evidence to establish an implied trust, however, must be clear and convincing.. . . The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust.'"
And in Shong v. Farmers' & Merchants' State Bank, supra 70 N.W.2d at 911, this Court said:
"The courts are reluctant to ingraft a trust by parol on the legal title to real estate, and there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence."
In the instant case, Rose Mary asks the Court to impose a constructive trust on Roland's joint tenancy interest in the property. It is her contention in this appeal that the district court properly found that both parties were mistaken as to the legal effect of the 1966 quit claim deed executed by Rose Mary, and that the trial court properly concluded therefrom that an implied trust was created because Roland acquired his interest in the property by mistake.
Based upon the aforementioned cases, we conclude that it was Rose Mary's burden to establish by clear and convincing evidence the existence of a mistake which would, pursuant to the provisions of § 59-01-06(2), *839 N.D.C.C., empower the court to impose a constructive trust on Roland's interest in the property.
At trial, Rose Mary testified that she executed the 1966 quit claim deed transferring title to the land to Roland and herself as joint tenants with right of survivorship at the behest of Roland, who, she asserts, told her that the transfer was necessary to avoid probate, simplify tax matters and to make sure that the land would not revert to her father's estate upon Rose Mary's death. She asserts in her testimony that she had no intention to transfer any interest in the property to Roland, although the quit claim deed conveying such interest is absolute on its face. Based upon such an asserted mistake, Rose Mary seeks to, in effect, set aside the 1966 deed by asking the court to impose a constructive trust on any interest which Roland may have in the property.
A transfer based upon mistake may be set aside and the property restored to the grantor, where, for example, according to Bogert, supra at § 474, "money has been lent in ignorance of the previous institution of bankruptcy proceedings against the borrower, where without the knowledge of either party a deed covers more land than was intended, where through the fault of the scrivener a deed named the wrong tract of land, or where the deed is by mistake made to a grantee not intended to take". See, e. g., Kernkamp v. Schulz, 44 N.D. 20, 176 N.W. 108 (1919).
In contrast to the examples set forth in Bogert, the mistake claimed in the instant case involves an interpretation of the legal significance of the quit claim deed executed by Rose Mary. There is no claim in the instant case that the deed did not cover the land which it purported to convey, or that Rose Mary mistakenly conveyed the property in question to a grantee not intended to take. On the contrary, Rose Mary certainly understood that the joint grantee was her husband, Roland, and that the deed covered the land which she had received as a gift from her father. We do not believe that the "mistake" claimed by Rose Mary in the instant case is the type of "mistake" referred to in § 59-01-06(2), N.D.C.C., which would permit the court to impose a constructive trust which would, in effect, set aside the deed, absolute on its face, conveying an interest in the real property to Roland.
However, even if a mistake as to the legal effect of a quit claim deed would be a "mistake" invoking the provisions of § 59-01-06(2), N.D.C.C., we do not believe that Rose Mary, in the instant case, has satisfied her burden of proving by clear and convincing evidence the existence of such a mistake as would empower the court to impose an implied trust.
A review of the record in the instant case shows that the only evidence concerning the alleged mistake submitted by either party was the testimony of Rose Mary herself. In her testimony, Rose Mary repeatedly asserted that she had no intent to transfer any interest in the property to Roland by executing the quit claim deed in 1966, and that it was done solely at the urging of Roland in order to simplify tax matters, avoid probate, and prevent the property from reverting to her father's estate at Rose Mary's death. How Rose Mary received the impression that the property might revert to her father's estate on her death is not shown in the record. The only evidence offered by Rose Mary was her assertion that one of the reasons used by Roland to induce her to execute the deed was to prevent the land from reverting to her father's estate on her death. Rose Mary also testified that certain remarks made by Roland in casual conversations in the presence of friends appeared to be admissions by him that the land was Rose Mary's alone. However, such casual remarks, which are alleged to be admissions of the opposing party, are of little evidentiary value in establishing the grounds for imposing an implied trust. Carter v. Carter, 14 N.D. 66, 103 N.W. 425 (1905).
*840 Furthermore, we do not believe that the evidence submitted by Rose Mary is such that no reasonable alternative explanation is possible. It is equally possible that Rose Mary's transfer of the title to Roland and herself as joint tenants is explainable on the theory that such ownership would be beneficial in simplifying tax matters and in probating either's estate upon the death of one or both of them. It is certainly consistent with common practice that one spouse, because of the love and affection held for the other spouse, would make a gift of his or her property to the other, especially if tax and probate considerations were being weighed. There is no evidence that the parties were experiencing any deterioration of their marriage in 1966, when title to the property was conveyed by Rose Mary. Rose Mary offered no evidence which would have shown the court that the alleged tax and probate inducements were made in a fraudulent or misleading manner. All that Rose Mary offered were her own inferences and conclusions that such inducements by Roland, if made, did not properly apprise her of the legal effect of her execution of the quit claim deed.
We therefore conclude that the trial court erred in imposing a constructive trust on Roland's joint tenancy interest in the land.
Roland's second contention in this appeal is that the district court erred in awarding the disputed property to Rose Mary as a just and equitable division of the parties' North Dakota property after a dissolution of their marriage was granted by a court of competent jurisdiction in Arizona.
Roland has abandoned any claim that the district court in North Dakota lacked jurisdiction to equitably divide the property as an aftermath of the Arizona decree, which decree specifically exempted the North Dakota property from its impact. Roland's contention, however, is that the trial court did not have before it sufficient evidence from which it could properly conclude, within the exercise of its sound discretion, that the property should be awarded to Rose Mary.
In determining whether or not the district court erred in awarding the property to Rose Mary, we must treat this case as we would treat a judgment dividing the couple's property after a divorce granted in North Dakota. In Rohde v. Rohde, 154 N.W.2d 385 (N.D.1967), in paragraphs 4, 5, and 7 of the syllabus, this Court held:
"4. Where a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper. Section 14-05-24, N.D.C.C.
"5. In divorce actions, the distribution of property between the parties depends upon the facts and circumstances of each individual case.
"7. In divorce actions, the division of property to be an `equitable division,' need not be an equal division."
Findings that a particular division of property between the parties to a divorce action is equitable are appropriately dealt with on appeal as findings of fact. Ferguson v. Ferguson, Syll. ¶ 3, 202 N.W.2d 760 (N.D.1972); Novlesky v. Novlesky, 206 N.W.2d 865 (N.D.1973); Grant v. Grant, 226 N.W.2d 358 (N.D.1975); Larson v. Larson, Syll. ¶ 2, 234 N.W.2d 861 (N.D.1975). Findings of fact by the trial court will not be set aside unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.; Larson v. Larson, supra at Syll. ¶ 1. A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Larson v. Larson, supra at Syll. ¶ 3; In re Estate of Elmer, 210 N.W.2d 815, 820 (N.D.1973).
In Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966), this Court established the basic factors which a trial court should consider in determining a division of property in a divorce action. In paragraph 7 of the syllabus in Fischer, this Court held:

*841 "7. In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material."
In the instant case, the district court received in evidence a copy of the property settlement agreement which was incorporated into the dissolution decree executed by the Arizona court, as well as the testimony of Rose Mary. We have carefully examined the record, and conclude that the trial court had ample evidence before it from which it made a just and equitable distribution of the parties' North Dakota property by awarding such property to Rose Mary.
Rose Mary's uncontradicted testimony, much of it elicited on cross-examination by counsel for Roland, established that:
1. The parties were married in 1953.
2. Roland had no property when they were married.
3. Rose Mary acquired the land in question as a gift from her father, who executed the deed conveying the land to her before he had any knowledge of the impending marriage, although delivery of the deed occurred after such marriage.
4. Rose Mary received the rental payments on the land in question, and essentially controlled the disposition of such income, although the funds were commingled in the parties' joint checking account and were sometimes used for household expenses.
5. Roland received $3,000 as a gift from his mother during the marriage of Roland and Rose Mary.
6. Both parties worked during the course of their marriage, Rose Mary supporting the household when Roland was ill.
7. They have one son, who was an emancipated minor at the time of trial.
8. Rose Mary had a high school education, plus course-work in practical nursing; Roland completed one year of high school.
9. Rose Mary is a practical nurse; Roland owns a carpet installation business.
10. Rose Mary did "some" work in the carpet business during their marriage.
11. Rose Mary described the property settlement agreement as "unequal", asserting that Roland fared better than she did under the terms of such agreement.
From an examination of the property settlement agreement, it is apparent that the property distribution approved by the Arizona court also includes relevant factors presented to the district court in the instant case, which are properly considered in reviewing the district court's award of the land to Rose Mary. Such property settlement agreement provides, in part, that:
1. Roland received:
a. Real estate in Pinewood, Arizona.
b. Certain personal property, including a motorcycle, trailer, boat, two trucks, and a pickup truck.
c. All business assets of Rod's Carpet Service.
d. $3,000 in cash (which Rose Mary testified represented the gift from Roland's mother).
e. Certain jewelry, household goods, clothing, and personal effects.
2. Rose Mary received:
a. Real estate and house in Phoenix, Arizona.
b. Thunderbird automobile.

*842 c. $213.51 in proceeds from an insurance claim.
d. Certain household furnishings, jewelry, clothing, and personal effects.
e. Coin collection.
f. U.S. Government bond (value not stated).
In awarding the Mercer County land to Rose Mary, the district court placed special emphasis on the fact that the property was a gift to Rose Mary from her father, and that it had been generally treated as her own property during the course of her marriage to Roland. In reviewing the evidence before the district court, we cannot say that such court's findings distributing the property were clearly erroneous. Consequently, the trial court's judgment awarding the land to Rose Mary as an equitable distribution of the property after the parties' divorce is affirmed.
Judgment affirmed.
ERICKSTAD, C. J., and SAND, PEDERSON and VOGEL, JJ., concur.
NOTES
[1] "That the Court makes no determination of the respective property rights or interests of the parties in and to real property located without the State of Arizona and particularly that situated in the State of North Dakota, described as: The Southwest Quarter of Section 15, Township 144, Range 87, located in Mercer County, Hazen, North Dakota." [¶ 3, Decree of Dissolution.]